# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ALVIN ZARCHARY SAMUEL,

       Defendant-Appellant.

UNPUBLISHED
June 21, 2018

No. 336499
Wayne Circuit Court
LC No. 16-006350-01-FC

Before: SWARTZLE, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(b), one count of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(b), and one count of accosting a minor for an improper purpose, MCL 750.145a. The trial court sentenced defendant to concurrent prison terms of 19 to 40 years for each of the CSC I convictions, 5 to 15 years for the CSC II conviction, and 2 to 4 years for the accosting a minor conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's three female cousins (who were sisters) accused him of sexually abusing them multiple times at their mother's home, their grandmother's home, and defendant's home. The accusations included that defendant had fondled and sexually penetrated each of the girls multiple times when they were between the ages of 6 to 13 years. One of the girls disclosed defendant's abuse to a school counselor, prompting the counselor to inform the police and Children's Protective Services (CPS). Defendant (then aged 19) was arrested on June 29, 2016. Defendant admitted during a police interview that he had had anal sex with each of the girls, and he signed a written statement admitting that he had sexually penetrated each of the girls multiple times. At trial, defendant denied having committed the acts described in the statement, and asserted that he had smoked marijuana before he was arrested, that he had been told that he would go to prison for life, and that he had told the officers what they wanted to hear believing that they would help him avoid prison if he did so. The girls testified to the sexual abuse at trial.

During its opening statement, the prosecution noted that there was no physical or DNA evidence of the sexual abuse because the abuse had not been reported contemporaneously with the assaults. The prosecution then made certain comments regarding the credibility of the girls

-1-

who would be testifying. During closing arguments, the prosecution again addressed the credibility of the girls. The prosecution's comments regarding the girls' credibility are discussed in greater detail later in this opinion.

After the jury returned its verdict,[1] retired visiting Judge Antonio P. Viviano informed the parties that he would not be present on November 18, 2016 when sentencing was scheduled to occur. Judge Viviano asked defendant's counsel whether defendant would like to be sentenced before him or whether he would "waive my presence and have another judge sentence him." Defendant's counsel responded, "That would be fine, Judge." At the sentencing hearing, retired visiting Judge Dalton A. Roberson stated that defendant "has a right to have the judge who presided at his trial sentence him. Do you have any objections to me sentencing him?" Defendant's counsel responded, "No, judge." Defendant was not personally asked whether he had any objection to proceeding before a different judge at sentencing. Defendant's guidelines minimum sentence range was 126 to 210 months. Judge Roberson sentenced defendant to a minimum term of 19 years (228 months) in prison for each of his CSC I convictions, an upward departure of 18 months.

This appeal followed.

## II. PROSECUTORIAL MISCONDUCT[2]

Defendant argues on appeal that the prosecution committed misconduct by vouching for the credibility of the girls and that his trial counsel provided ineffective assistance by failing to object. We disagree. Defendant failed to object or request a curative instruction from the trial court; accordingly, this issue is unpreserved. *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). Unpreserved claims "are reviewed for plain error affecting substantial rights." *People v Norfleet*, 317 Mich App 649, 660 n 5; 897 NW2d 195 (2016). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent person, or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Unger* (*On Remand*), 278 Mich App 210, 235; 749 NW2d 272 (2008).

---

[1] The jury acquitted defendant of four additional counts of CSC I (including both of the charges that related to one of the three girls) and one additional count of CSC II.

[2] This Court noted in *People v Cooper*, 309 Mich App 74, 87–88; 867 NW2d 452 (2015), that the phrase "prosecutorial misconduct" has become a term of art "often used to describe any error committed by the prosecution, even though claims of inadvertent error by the prosecution are 'better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases arising to the level of 'prosecutorial misconduct.' " Here, defendant alleges that the prosecution acted as an unsworn witness and improperly vouched for the victim's credibility with the "weight and influence" of the office of prosecuting attorney, see *People v Dane*, 59 Mich 550, 553; 26 NW 781 (1886). While we ultimately disagree that misconduct occurred, we will adopt the characterization of defendant's claim as one for prosecutorial misconduct, not mere technical or inadvertent error.

"[T]he test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A fair trial for a defendant "can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64.

Here, defendant argues that the prosecution impermissibly vouched for the credibility of the girls' testimony. The prosecution may not "vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). Such commentary could influence the jury to decide the case based on the prosecution's special knowledge and not on the evidence presented. *People v Bennett*, 290 Mich App 465, 476-477; 802 NW2d 627 (2010), citing *Bahoda*, 448 Mich at 276. Further, the prosecution may not vouch for a witness's credibility based on the prosecution's integrity or the prestige of the position. *People v McGhee*, 268 Mich App 600, 633; 709 NW2d 595 (2005). Statements by the prosecution concerning the credibility of a witness may infringe on the "exclusive province of the jury" to determine credibility, particularly given the importance of the prosecution's position. *People v Erb*, 48 Mich App 622, 631-632; 211 NW2d 51 (1973). However, the prosecution may comment on its "own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). The prosecution may argue from the facts that a witness should be believed. *Id*.

Prosecutorial comments must be read as a whole and evaluated in context, including the arguments of the defense and the relationship they bear to the evidence. *Thomas*, 260 Mich App at 454. Prosecutors have "great latitude regarding their arguments" in closing, and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236, citing *Bahoda*, 448 Mich at 282.

Here, during its opening statement, the prosecution explained to the jury that there was no medical or DNA evidence of sexual abuse and that the allegations were not reported contemporaneously with the assaults. The prosecution then remarked, "So we don't have any medicals. But we do have three very credible girls who will tell you about the different incidents that happened between them and [defendant]." The prosecution said that the girls would testify about specific incidents and indicated that while "there is no evidence," the jurors could observe the girls while they testified. Additionally, during closing argument, the prosecution, while discussing a specific incident of sexual abuse described by one of the girls, stated that "the sisters all kind of corroborate each other's testimony." The prosecution then stated, "These girls were very credible. These [sic] goes to exactly what happened. There was no reason to lie or make it up. [One of the girls] saw the defendant sexually assault her sisters. There was a giant conspiracy.[3] That is assault happened [sic]."

---

[3] From context, it is clear that the prosecution meant there was *no* "giant conspiracy" to make defendant appear guilty of sexual assault.

Defendant argues that the prosecution's comments were presented as fact rather than as comments on the evidence. Defendant cites *Erb*, 48 Mich App at 631, to support his argument that the prosecution's comments on the girls' credibility constituted impermissible, unsworn testimony. However, in *Erb*, the prosecution explicitly vouched for the credibility of the witness and declared personal knowledge of the witness's truthfulness:

> "[I]f I thought a witness would come into court and testify under oath a falsity of any kind, he would never be called as a witness in behalf of the people, never. It is my duty to present the truth and I expect the witnesses that I call to present the truth, and his testimony is that there is no question that the defendant is the man. [*Id*.]

The *Erb* Court stated that, although the jury would undoubtedly know that the prosecution thought that the defendant was guilty, nonetheless the prosecution could not "vouch for the defendant's guilt" by " 'attempt[ing] to place the prestige of his office, or that of the police, behind a contention that the defendant is guilty.' " *Id.* at 632, quoting *People v Cowell*, 44 Mich App 623, 628; 205 NW2d 600 (1973).

Unlike in *Erb*, the prosecution in this case linked its comment regarding the witnesses' credibility to the evidence. During its opening statement, the prosecution noted that there was a dearth of physical evidence and described the testimonial evidence as credible, emphasizing that the jury would hear the testimony and view the witnesses, and implying that the jurors could assess their credibility themselves. The prosecution did not state or imply that it had special knowledge of the girls' credibility. Similarly, the prosecution's statement in closing argument that the girls were credible was not premised on any special prosecutorial knowledge. Rather, the prosecution argued that the testimony was credible because there was no evidence of a motive to manufacture allegations and that the girls corroborated each other in their testimony. The prosecution may remark that the evidence supports the conclusion that a witness is credible, particularly "when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Thomas*, 260 Mich App at 455, citing *People v Flanagan*, 129 Mich App 786, 796; 342 NW2d 609 (1983). Here, without physical evidence, the jury had to determine whether the girls' or defendant's version of events was credible. The prosecution argued that the girls were credible in view of the evidence, and did not interfere with the jury's task of deciding credibility by referring to personal knowledge or the prestige of the office of the prosecuting attorney. Therefore, the prosecution's remarks were not inappropriate. We also note that the jury acquitted defendant of four counts of CSC I and one count of CSC II, which supports the conclusion that the jury weighed the evidence and made its own credibility determinations rather than being swayed by the prosecution's remarks.

Defendant also argues that his trial counsel provided ineffective assistance by failing to object to the prosecution's statements. However, because there was no misconduct, any objection to the remarks would have been futile. Counsel will not be deemed ineffective for failing to make a futile objection. *In re Archer*, 277 Mich App 71, 84; 744 NW2d 1 (2007).

## III. SENTENCING JUDGE

Defendant argues that resentencing is required because he was sentenced by a judge who did not preside over his trial. We disagree.

"[A] defendant should be sentenced by the judge who presided at his trial, provided that the judge is reasonably available." *People v Pierce*, 158 Mich App 113, 115; 404 NW2d 230 (1987), citing *People v Clemons*, 407 Mich 939, 939; 291 NW2d 927 (1979). The reason for having the same judge preside over the trial or plea hearing and the sentencing of the defendant is to ensure that the sentence is "tailored to fit the particular circumstances of the case and the offender" as established during the trial or at the plea proceeding. *Pierce*, 158 Mich App at 115-116. In *Pierce*, 158 Mich App at 116, this Court noted that the sentencing judge had presided over two sentencing hearings "evolving from defendant's challenges to the contents of the initial presentence report," and was therefore familiar with the relevant circumstances, and stated:

> We also note, in passing, that defendant was informed at the plea-taking that another judge would sentence him, and the original presentence report stated that the sentencing judge would replace the plea-taking judge; yet he never made any objection to that procedure. Thus, resentencing is not required. [*Id.*]

Defendant has waived any challenge to his sentencing by a different judge. Waiver is the "intentional relinquishment or abandonment of a known right," and it extinguishes any error. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). A waiver requires the express approval of the trial court's action. *People v Loper*, 299 Mich App 451, 472; 830 NW2d 836 (2013) (citation omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). "A defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal." *Carter*, 462 Mich at 214 (citation omitted). Because defendant's trial counsel declined an apparent offer to have Judge Viviano sentence defendant on a date other than the scheduled sentencing date and twice expressly approved sentencing by a judge other than Judge Viviano while understanding that defendant had a right to be sentenced by Judge Viviano, defendant has waived this issue for consideration on appeal.

Defendant also argues, however, that his trial counsel provided ineffective assistance by agreeing to have him sentenced by a different judge. To preserve a claim of ineffective assistance of counsel, a defendant must move the trial court for a new trial or request a *Ginther*[4] hearing in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant failed to do so. Our review is therefore limited to errors apparent on the record. *People v Unger* (*On Remand*), 278 Mich App 210, 235; 749 NW2d 272 (2008). A claim of ineffective assistance of counsel is a mixed question of fact and law; we review for clear error

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

the trial court's factual findings, but review de novo the constitutional question of whether a defendant was deprived of his Sixth Amendment[5] right to counsel. *Id*. at 242.

The right to counsel encompasses the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). A counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). A defendant must overcome the strong presumption that counsel's performance constituted "sound trial strategy." *Id*. at 668. Counsel's performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Id*. The effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Here, defendant's trial counsel did not provide a reason on the record for agreeing to waive defendant's right to sentencing by the trial judge. It may be that counsel believed that the trial judge would be less likely to issue a lenient sentence than would a different sentencing judge, or that he believed defendant would benefit from having a judge sentence him who had not observed the three young girls testify. In the absence of a *Ginther* hearing, defendant has not carried his burden of overcoming the presumption that defense counsel's conduct constituted sound trial strategy. *Jordan*, 275 Mich App at 668.

In any event, even if defense counsel's conduct fell below an objective standard of reasonableness, defendant has not demonstrated that he was prejudiced. *Id*. at 667. The sentencing judge reviewed the presentence investigation report before sentencing, and heard brief statements from counsel and the prosecution, who requested a consecutive sentence that was not imposed. The sentencing judge also heard a statement by one of the girls, and heard a statement from defendant, who proclaimed his innocence and noted the acquittals on five charges. Although defendant argues that the sentencing judge "did not know the case," defendant presents no evidence that the sentencing judge was uniformed about the evidence admitted at trial or was unable to tailor a sentence to fit the circumstances of the case and the offender. See *Pierce*, 158 Mich App at 115-116. Defendant has not established that it was an improper strategy to waive sentencing by the trial judge, or that the waiver prejudiced him. Accordingly, he has not established ineffective assistance of counsel.

## IV. SENTENCING DEPARTURE

Finally, defendant argues that his sentence, which departed from the recommended guidelines minimum sentence range, was unreasonable. We disagree. While a court must score and consider the sentencing guidelines, the court is not compelled to impose a minimum

---

[5] US Const, Am VI.

-6-

sentence within the calculated range. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). A sentencing court may depart from the sentencing guidelines range without stating substantial and compelling reasons to justify the departure; however, the trial court's sentence must be reasonable. *Id*. at 392. This Court reviews the trial court's imposition of a departure sentence for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017); *People v Walden*, 319 Mich App 344, 351, 355; 901 NW2d 142 (2017). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

The reasonableness of a sentence is determined by evaluating whether the sentence "violate[d] the principle of proportionality, which require[s] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). This Court has recited several factors for consideration regarding the proportionality of a sentence, such as:

> (1) the seriousness of the offense, (2) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation, and (3) factors that were inadequately considered by the guidelines in a particular case. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (citations omitted).]

A trial court should also take "into account the nature of the offense and the background of the offender." *Id*. at 45, quoting *Milbourn*, 435 Mich at 651.

Here, the trial court sentenced defendant to a minimum of 19 years (228 months) in prison for his CSC I conviction, whereas the guidelines recommended a minimum sentence range of 126 to 210 months. Therefore, defendant's sentence exceeds the upper end of the guideline minimum sentence range by 18 months. The trial court offered the following rationale for the sentence imposed:

> [Y]ou're a very smart young man, but you are also a sexual predator. You knew what you were doing. And I believe you did it based on what the jury has done. You've done all of this research over there. But, in so far, you have no remorse for what you did and what the jury said that you did. You have not accepted the fact that your behavior is abnormal. And if you walked out of this door tomorrow, you'd probably do it again.

The sentencing court properly considered the fact that defendant lacked remorse and had a poor chance at rehabilitation as reasons for the term of sentence imposed. See *Steanhouse*, 313 Mich App at 46. Additionally, defendant's CSC I convictions resulted from his conduct toward one of the girls to whom he offered money in exchange for sexual acts and whom he assaulted "too many times to count" under a threat that he would assault her sisters if she declined. Defendant was assessed 50 points, the maximum allowed, for offense variable (OV) 13, which provides that 50 points be assessed if "the offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age."

MCL 774.43. But the girl testified that defendant's abuse of her consisted of "sexual intercourse" and occurred "more [times] than [she could] count" between the ages of 7 and 13. The sentencing court thus could have properly concluded that OV 13 was given inadequate weight. *Steanhouse*, 313 Mich App at 46. Similarly, OV 10 was scored at 15 points, the maximum possible, for predatory conduct against a victim. See MCL 777.40(a). But in this case, defendant also exploited both the girls' youth and domestic relationships, each of which would have justified a score of 10 points. See MCL 777.40(b). The sentencing court thus could have properly concluded that OV 10 was thus given inadequate weight. *Steanhouse*, 313 Mich App at 46.

More generally, defendant was assessed 160 points for his OV score, placing him at the highest OV level, OV level VI, where offenders with an OV score of 100 or higher are placed. See MCL 77.62. The trial court thus could have properly concluded that the fact that defendant's OV score "vastly exceeded" the amount necessary to reach the highest OV level justified the departure, as those additional 60 points had no effect on the recommended minimum sentence. *People v Stewart*, 442 Mich 937, 937; 505 NW2d 576 (1993) (holding that an OV score of 70 points over the amount needed to reach the highest level of offense severity justified the trial court's upward departure of five years above the guidelines minimum sentence range).

In sum, we hold that the upward departure from the advisory guidelines range was "proportionate to the seriousness of the circumstances surrounding the offense and the offender," *Steanhouse*, 500 Mich at 474, and that the trial court did not abuse its discretion because it imposed a reasonable sentence, *Walden*, 319 Mich App at 353 ("[c]onsidering the modest nature of the upward departure, the trial court's statements in support of the sentence, and the record, we conclude that the trial court did not abuse its discretion and that the sentence imposed satisfied the requirement that a sentencing departure be 'proportionate to the seriousness of the circumstances of the offense and the offender.' ") (Citing to *Milbourne*, 435 Mich at 636).

Defendant further argues that the trial court impermissibly based the sentence on defendant's refusal to admit his guilt. We disagree. "A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt." *Payne*, 285 Mich App at 193-194, quoting *Dobek*, 274 Mich App at 104. A defendant should not be penalized for exercising his constitutional right to a trial. *People v Mosko*, 190 Mich App 204, 211; 475 NW2d 866 (1991). However, this does not preclude a judge from taking a defendant's lack of remorse into consideration. See *People v Walker*, 319 Mich App 344, 353; 901 NW2d 142 (2017).

At sentencing, defendant spoke of "how unfortunate it [was] that I couldn't totally prove my innocence in this case." Defendant stated that the jury could see through some of the lies but that he could not understand how the jury could not see through all of the lies. Defendant expressed that he was not bitter towards the jury despite its error, and asserted that the jurors must have been confused or uncertain because their verdict of acquittal on certain counts demonstrated that they knew that the girls were lying. Defendant expressed his belief that he should have been acquitted of all charges because the jury should have consistently found that the girls were lying. Defendant added that he was young and had plans for an education and to do something great with his life, thanked his family, and asked that God bless the girls.

This Court examines three factors in determining whether the sentencing court improperly considered a defendant's refusal to admit guilt: "(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the

appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *Payne*, 285 Mich App at 194, citing *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987). Where the three factors are implicated, the "sentence was likely to have been improperly influenced by the defendant's persistence in his innocence." *Dobek*, 274 Mich App at 104, citing *Wesley*, 428 Mich at 713. Here, defendant did continue to maintain his innocence, which the trial court referenced. However, the trial court did not make any comments suggesting that defendant should admit his guilt or indicate that the sentence would have been reduced had he admitted his guilt. The trial court made passing reference to the fact that defendant demonstrated "no remorse," and had "not accepted the fact that your behavior is abnormal." A fair reading of these comments does not lead to the conclusion that the trial court was insistent that defendant admit his guilt. A sentencing court may consider a defendant's lack of remorse in sentencing without impermissibly considering the defendant's failure to admit guilt. *Dobek*, 274 Mich App at 104; *Wesley*, 428 Mich at 713-714. And, as stated, there was ample support for the departure even without consideration of defendant's lack of remorse.

Affirmed.


/s/ Brock A. Swartzle
/s/ Mark T. Boonstra