PEOPLE v TAYLOR

Docket No. 265778. Submitted February 13, 2007, at Detroit. Decided
     April 5, 2007, at 9:00 a.m.

   Geracer R. Taylor was convicted by a jury in the Macomb Circuit Court,
   Diane M. Druzinski, J., of first-degree premeditated murder and
   possession of a firearm during the commission of a felony in connec-
   tion with the shooting death of Buel Lasater. The defendant appealed.

   The Court of Appeals *held*:

   1. The evidence presented at trial was sufficient to enable a
   rational trier of fact to conclude beyond a reasonable doubt that
   the defendant shot and killed Lasater after premeditation and
   deliberation. Lasater told the police that he was shot by "Booger"
   and several witnesses testified that the defendant's nickname is
   "Booger." There was testimony that on the night before the
   shooting, the defendant attended a party at the house where
   Lasater was shot and that the defendant fought with Lasater.
   Briefly before the shooting, a neighbor heard a voice similar to that
   of someone who had been at the party. The police recovered spent
   shotgun shells outside Lasater's bedroom window and found live
   shells at the defendant's residence that had the same bunter mark
   as the spent shells. The defendant's fingerprints were on the box
   of live shells found at his residence. Because the evidence against
   the defendant was strong, the defendant's claim that the verdict
   was contrary to the great weight of the evidence must be rejected.

   2. Evidence of Lasater's statements to the police identifying
   the defendant as the shooter was properly admitted by the trial
   court. Two alternative bases supported their admission. The
   statements were not testimonial under *Crawford v Washington*,
   541 US 36 (2004), or they were dying declarations that were
   admissible as an historical exception to the Confrontation Clause
   under *Crawford*.

   3. The defendant was not denied due process and equal protec-
   tion on the asserted ground that African-Americans were systemati-
   cally excluded from the jury pool. The defendant needed, but failed, to
   show that a distinctive group was underrepresented in his jury pool
   and that the underrepresentation was the result of systematic
   exclusion of the group from the jury selection process.

4. A curative instruction could have eliminated any possible prejudice resulting from alleged misconduct by the prosecutor relating to a comment made in the prosecutor's opening statement and to the introduction of evidence indicating that the defendant's mother owned a shotgun. The defendant, therefore, was not denied a fair trial.

5. The defendant was not denied the effective assistance of counsel at trial. The defendant's claims that counsel performed deficiently in his cross-examination of the police officers and that counsel was ineffective for not conducting an investigative background check of the victim lack merit. A new trial is not warranted.

Affirmed.

EVIDENCE — HEARSAY — DYING DECLARATIONS — HOMICIDE.

Dying declarations are admissible in prosecutions for homicide as an historical exception to the Confrontation Clause (MRE 804[b][2]).

*Eric J. Smith,* Prosecuting Attorney, *Robert Berlin,* Chief Appellate Attorney, and *Joshua D. Abbott, Assistant Prosecuting Attorney,* for the people.

*Lawrence S. Kratz* for the defendant.

Before: O'CONNELL, P.J., and SAAD and TALBOT, JJ.

SAAD, J. A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony, MCL 750.227b. These convictions stemmed from defendant's killing of Buel Lasater. The court sentenced defendant to life imprisonment for his murder conviction and a consecutive two-year term of imprisonment for his felony-firearm conviction. For the reasons set forth below, we affirm.

## I. INSUFFICIENCY OF EVIDENCE

Defendant says that the prosecution presented insufficient evidence to prove that he was the person who shot Lasater, or, alternatively, that the prosecution

presented insufficient evidence to prove that he shot Lasater with premeditation and deliberation. To discern whether a prosecutor presented sufficient evidence to sustain a conviction, we review the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979). "Circumstantial evidence and reasonable inferences that arise from the evidence can constitute sufficient proof of the elements of the crime." *People v Akins*, 259 Mich App 545, 554; 675 NW2d 863 (2003). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). To establish first-degree premeditated murder, the prosecutor must prove that the defendant intentionally killed the victim with premeditation and deliberation. See *People v Bowman*, 254 Mich App 142, 151; 656 NW2d 835 (2002). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Before he died, Lasater told the police that he was shot by "Booger." Several witnesses testified that defendant's nickname is "Booger." On the night before the shooting, defendant attended a party at the house where Lasater was shot and defendant fought with Lasater. Briefly before the shooting, a neighbor heard a voice that she recognized as the same voice of someone who had been at the party the night before. Evidence showed that Lasater was shot four times with a shotgun, and the police recovered spent shotgun shells outside Lasater's bedroom window. After the shooting,

the police searched defendant's residence and found a half-empty box of shotgun shells on his living room couch. Some of the shells used in the shooting had the same bunter mark as the live shells that were found at defendant's residence, and defendant's fingerprint was found on the box of live shells. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that defendant shot and killed Lasater, and that defendant possessed a firearm during the commission of the crime.

Furthermore, the evidence that defendant and Lasater fought the night before the shooting allowed the jury to infer that defendant had a preconceived motive to shoot Lasater. The jury could reasonably infer from the evidence that defendant left Lasater's residence, obtained a shotgun and shells, placed a lawn chair under Lasater's bedroom window, climbed atop the chair, and shot Lasater four times with a shotgun while Lasater was in bed. This evidence, viewed in the light most favorable to the prosecution, was sufficient to enable the jury to conclude beyond a reasonable doubt that defendant shot Lasater after premeditating and deliberating about the crime. Therefore, we reject defendant's arguments that the prosecutor presented insufficient evidence to convict him. *Akins, supra.* Because of the strong evidence that linked defendant to Lasater's murder, we also reject defendant's unpreserved and nearly identical claim that the verdict ran contrary to the great weight of the evidence. See *People v Noble,* 238 Mich App 647, 658; 608 NW2d 123 (1999). Because the evidence reasonably supports the verdict, defendant has not shown plain error and a remand for a hearing on this issue is not warranted. *Id.*

## II. DYING DECLARATION

Defendant contends that the trial court erred when it permitted police officers to testify that Lasater identified defendant as his killer. The record reflects that, within minutes of the shooting of Lasater, police officers responded to a call and entered the house where neighbors said they heard gunshots. Immediately upon forcibly entering the house, police officers found several people in the house and found Lasater in his bedroom, bleeding profusely from gunshot wounds, and the officers asked Lasater to identify the shooter. Though Lasater at first hesitated, after the officers advised Lasater that he "might not make it" and asked him to identify his assailant, Lasater identified the defendant, by his nickname, as the shooter. Within minutes, emergency medical personnel arrived and an additional police officer arrived who again advised Lasater that he would not live much longer and asked him to identify his assailant and, once again, Lasater identified defendant as the shooter. After he was kept in an induced coma for a few weeks, Lasater died from his gunshot wounds.

Several months before trial, the trial court held an evidentiary hearing regarding the admissibility of evidence of Lasater's statements to the police officers that identified defendant as the killer. The trial court reasoned that because the police officers took the statements from Lasater in the hectic minutes immediately following what turned out to be the fatal shooting of Lasater, the statements were not *testimonial* under *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). The court further ruled that, were the statements to be treated as testimonial under *Crawford*, the statements would nonetheless be admissible as dying declarations because the United States

Supreme Court in *Crawford* opined, in dicta, that dying declarations may be afforded special historical status as an exception to the Confrontation Clause. We hold that the trial court ruled and reasoned correctly.

In *Davis v Washington*, ___ US ___; 126 S Ct 2266, 2273; 165 L Ed 2d 224 (2006), the Court held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." When, as here, police officers arrive at the crime scene immediately after a shooting, with a number of people in the house, and where the victim—who is clearly dying of multiple gunshot wounds—identifies his assailant, the identifying statements given to the police are nontestimonial under *Crawford*.

Moreover and alternatively, we hold that Lasater's identifying statements to the police immediately after being shot, with knowledge of his impending death, constitute dying declarations. MRE 804(b)(2); see also *People v Watkins*, 438 Mich 627, 637; 475 NW2d 727 (1991). In *Crawford*, the Supreme Court left open the question whether the "testimonial-nontestimonial" distinction is applicable to statements that fall within the ambit of the common-law rule that dying declarations, though hearsay, are admissible. Addressing this question, the Supreme Court of California in *People v Monterroso*, 34 Cal 4th 743, 764-765; 101 P3d 956; 22 Cal Rptr 3d 1 (2004), opined as follows:

> Dying declarations were admissible at common law in felony cases, even where the defendant was not present at the time the statement was taken. . . . In particular, the common law allowed " 'the declaration of the deceased, after the mortal blow, as to the fact itself, and the party by whom it was committed,' " provided that " 'the deceased at

the time of making such declarations was conscious of his danger.' " [*King v Reason,* 16 How St Tr 1, 24-25 (1722).] To exclude such evidence as violative of the right to confrontation "would not only be contrary to all the precedents in England and here, acquiesced in long since the adoption of these constitutional provisions, but it would be abhorrent to that sense of justice and regard for individual security and public safety which its exclusion in some cases would inevitably set at naught. But dying declarations, made under certain circumstances, were admissible at common law, and that common law was not repudiated by our constitution in the clause referred to, but adopted and cherished." [*State v Houser,* 26 Mo 431, 438 (1858)]; accord, [*Mattox v United States,* 156 US 237, 243-244; 15 S Ct 337; 39 L Ed 409 (1895)] ("from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility.") Thus, if, as *Crawford* teaches, the confrontation clause "is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding" [*Crawford, supra* at 1365, citing *Houser, supra* at 433-435)], it follows that the common law pedigree of the exception for dying declarations poses no conflict with the Sixth Amendment.

Based on the above-quoted reasoning, the California Supreme Court in *Monterroso* held that the trial court did not err in admitting a dying declaration under *Crawford.* For the reasons stated by the Supreme Court of California, we hold that, under *Crawford,* dying declarations are admissible as an historical exception to the Confrontation Clause.

Accordingly, we affirm the trial court's ruling on the alternative grounds that the identifying statements are (1) nontestimonial and (2) dying declarations and, as such, are an historical exception to the Confrontation Clause under *Crawford.*

III. DUE PROCESS CLAUSE AND EQUAL PROTECTION CLAUSE

Defendant also claims that he was denied due process and equal protection on the ground that African-Americans were systematically excluded from his jury array. "[T]o properly preserve a challenge to the jury array, a party must raise this issue before the jury is empanelled and sworn." *People v McKinney*, 258 Mich App 157, 161; 670 NW2d 254 (2003). Defendant did not raise any challenge to the array during voir dire, so he failed to preserve this issue. *Id.* Although defendant argues that this issue cannot be waived because a significant constitutional question is involved, our Supreme Court has held that unpreserved constitutional issues are reviewed only for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To establish a prima facie violation of the fair cross-section requirement, a defendant must show that a distinctive group was underrepresented in his venire or jury pool, and that the underrepresentation was the result of systematic exclusion of the group from the jury selection process." *People v Smith*, 463 Mich 199, 203; 615 NW2d 1 (2000). Defendant asserts that the systematic underrepresentation of African-Americans was "plainly evident" in his case, but there is nothing in the record to indicate the racial makeup of defendant's venire,[1] or more importantly, that any underrepresentation was because of systematic exclusion. Because defendant has not met his burden of showing either that African-Americans were underrepresented in his venire, or that any underrepresentation was due to systematic exclusion, he

---

[1] Defendant asserts that his jury was entirely white, but does not indicate how many African-Americans were in the jury pool, saying only that there were "virtually no potential black jurors."

has not established a plain error affecting his substantial rights.

## IV. PROSECUTORIAL MISCONDUCT

Defendant alleges that he was denied a fair trial because of prosecutorial misconduct. "Because he did not object at trial to the alleged misconduct, appellate review is precluded unless a curative instruction could not have eliminated possible prejudice or failure to consider the issue would result in a miscarriage of justice." *Noble, supra* at 660; see also *Carines, supra* at 763, 767.

Defendant contends that the prosecutor's opening statement was improper because it suggested that, approximately 30 minutes before the shooting, a neighbor heard someone knock on the door of the house where the shooting occurred and identify himself as "Boog." That the neighbor heard this statement is not disputed. However, during trial, the judge ruled that evidence of the statement was inadmissible because the neighbor could not establish that the voice she heard belonged to defendant. Because the trial court had not ruled on the statement's admissibility before the prosecutor commented on the anticipated testimony, nothing indicates that the comment amounted to misconduct. Furthermore, the trial court instructed the jury that the opening statements were merely the parties' theories and were not evidence. The court's instruction was sufficient to cure any prejudice, and, thus, reversal is unwarranted.

Defendant also argues that the prosecutor knowingly injected irrelevant and prejudicial evidence that defendant's mother owned a shotgun. Defendant argues that the evidence amounted to flagrant misconduct because the prosecutor knew that defendant's mother's shotgun

was ultimately ruled out as the murder weapon. However, the testimony was relevant to establish the prosecutor's theory that defendant's mother had two shotguns, one of which was never recovered. Because the prosecutor had a legitimate basis for believing that the evidence was admissible, and the prosecutor did not commit misconduct by raising the issue, a curative instruction could have cured any possible prejudice. *Id.*[2]

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also says that his trial counsel was ineffective. Defendant did not raise the issue in the trial court or seek a *Ginther*[3] hearing. Thus, we limit our review to mistakes that are apparent from the record. *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003).

> To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. In order to demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. [*Id.* at 140 (citations omitted).]

Defendant argues that counsel ineffectively cross-examined the police officers regarding Lasater's uncertainty about how the shooter fled the scene and the direction the shooter went. Defendant maintains, erroneously, that this evidence would have shown that

---

[2] Defendant's contention regarding police misconduct, which is related to the victim's dying declarations, is rendered moot by our holding on this issue.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Lasater was not looking in the direction of the shooter and, therefore, must have been speculating about who shot him. However, there is nothing in the record that Lasater made any statements about the shooter's direction or method of flight. In fact, the officers testified that the victim identified the shooter as "Booger" and said nothing more. Moreover, the record discloses that defense counsel elicited from the officers that Lasater did *not* tell them where the shots came from or how the shooter got away, and did not provide them with any details about the shooter's clothing or method of flight. We find no merit to defendant's claim that defense counsel performed deficiently in his cross-examination of the police officers.

Defendant also argues that counsel was ineffective for not conducting an investigative background check of the victim to determine unspecified evidence of his "character, propensities, motives or other past behaviors or personality characteristics." This claim fails for several reasons. First, the extent of defense counsel's investigative efforts is not apparent from the record. Second, though defendant asserts that such evidence existed, he does not identify any evidence to support the claim. Third, defendant does not explain how this information would have aided his case. Though the evidence could have been relevant if defendant claimed self-defense, defendant merely presented an alibi defense, so self-defense was not an issue at trial. MRE 404(a)(2). Therefore, defendant fails to establish any prejudicial deficiency in his trial counsel's performance, and a new trial is not warranted. *Riley, supra.*

Affirmed.