*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 21, 2020

Plaintiff-Appellee,

v

No. 346265
Saginaw Circuit Court

JAMIE D. PRUITTE,

LC No. 17-044315-FH

Defendant-Appellant.

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

A jury convicted defendant of felonious assault, MCL 750.82(1), prisoner in possession of a weapon, MCL 800.283(4), and two counts of assaulting a prison employee, MCL 750.197c, for hitting a fellow inmate with a padlock wrapped in a laundry bag and swinging his arm at the officers who intervened. Defendant raises several challenges to his convictions of assaulting a prison employee. We discern no error and affirm.

## I. BACKGROUND

Defendant is an inmate in a state correctional facility. On September 1, 2017, defendant attacked another inmate in a common area by hitting him over the head with a "lock in a sock"— a makeshift weapon which in this case was actually a padlock attached to a laundry bag. Four corrections officers responded to the attack: Officers Deshais, Justice, Masters, and Swartz. Officers Justice, Masters, and Swartz approached defendant to subdue him, while Officer Deshais remained further away. Defendant swung his right arm at the three advancing officers. In response, one officer attempted to tase defendant, and a second employed pepper spray. Defendant ran from the enclosed area to the "yard," the officers took chase, and defendant subsequently complied with an order to lay on the ground. Two separate security cameras captured these events.

The prosecutor initially charged defendant with one count of felonious assault and one count of prisoner in possession of a weapon. Defendant waived his preliminary examination on November 1, 2017. At that time, the prosecutor advised the court:

-1-

Your Honor, it's my understanding the defendant is going to waive preliminary exam. The People had placed defense on [sic] counsel on notice that had he proceeded to exam we would be moving to add two additional counts of assault on . . . a public officer . . . . We will not exercise the opportunity to do so inasmuch as he's going to waive his exam.

The district court then bound defendant over to the circuit court.

Six weeks later, the prosecution filed a notice of intent to amend the information to charge defendant with three counts of assaulting a prison employee relating to Officers Deshais, Masters, and Swartz. Defendant objected to the addition of these counts, stating his understanding that he waived his preliminary examination in exchange for the prosecution's leniency. The prosecutor explained that he had previously delayed in charging defendant with assault against the corrections officers while the parties were in plea negotiations. Although the prosecutor did not expressly state that he decided to pursue these additional charges when defendant rejected the plea, this was the sequence of events. The prosecutor agreed that a preliminary examination was required and the circuit court remanded the matter to the district court.

Defendant's preliminary examination was conducted on April 27, 2018. At the close of the exam, the prosecutor moved to add four counts of assaulting a prison employee, covering all of the officers present following defendant's attack of his fellow inmate. The video evidence presented at the preliminary exam revealed that Officer Deshais was too far removed to be placed in danger of a battery. Accordingly, the district court bound defendant over to the circuit court only on three counts of assaulting a prison employee, as well as felonious assault of the other inmate and possession of a weapon.

At trial, the corrections officers testified and explained the events depicted in the security camera footage. The victim of the padlock assault testified as well. The jury ultimately convicted defendant of felonious assault and possession of a weapon. The jury convicted defendant of assault only in relation to Officers Masters and Swartz, and acquitted him of the count related to Officer Justice.

## II. PROSECUTORIAL VINDICTIVENESS

Defendant contends that the prosecutor vindictively added charges against him after "the promise was made not to add them" and after he "exercised his right to a preliminary examination." The question before us is a hybrid; we must review both the district court's grant of the prosecutor's motion to amend the complaint and the propriety of the prosecutor's conduct. We review for an abuse of discretion the district court's decision. *People v Perry*, 317 Mich App 589, 594; 895 NW2d 216 (2016). We review de novo claims of prosecutorial misconduct. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).

It is a violation of due process to punish a person for asserting a protected statutory or constitutional right. To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.

-2-

> Such punishment is referred to as prosecutorial vindictiveness. [*People v Ryan*, 451 Mich 30, 35-36; 545 NW2d 612 (1996) (cleaned up).[1]]

There are two types of prosecutorial vindictiveness: presumed and actual. *Id*. at 36. Defendant contends that both presumed and actual prosecutorial vindictiveness infected his trial based on the timing of the prosecutor's decision to add counts of assaulting a prison employee. As described in *Ryan*, 451 Mich at 36:

> Actual vindictiveness will be found only where objective evidence of an expressed hostility or threat suggests that the defendant was deliberately penalized for his exercise of a procedural, statutory, or constitutional right. The burden is on the defendant to affirmatively establish actual vindictiveness. The mere threat of additional charges during plea negotiations does not amount to actual vindictiveness where bringing the additional charges is within the prosecutor's charging discretion. [Cleaned up.]

Absent evidence of actual malintent, a defendant is required to establish a presumption of vindictiveness. "[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is not sufficient to warrant presuming that subsequent changes in the charging decision are vindictive and therefore violative of due process." *People v Goeddeke*, 174 Mich App 534, 536; 436 NW2d 407 (1988). As more recently stated by this Court, "the imposition of additional charges that are within the prosecution's charging discretion does not constitute sufficient evidence from which to presume vindictiveness." *Perry*, 317 Mich App at 595.

The record does not support defendant's claim of actual vindictiveness. The prosecutor never "expressed hostility" or made any "threat" to "suggest[] that the defendant was deliberately penalized." The prosecutor's statement on the original preliminary examination date was not a promise to forever forgo bringing additional charges. Moreover, the timing of the charges does not raise the specter of presumed vindictiveness. The prosecutor did not suddenly tack on additional charges after defendant insisted on exercising his right to a preliminary exam. Rather, after defendant waived his preliminary examination, the parties attempted to negotiate a plea agreement. Although not expressly stated in the record, the prosecutor filed a notice to add the charges of assault against a prison employee when those negotiations stalled. Only then did defendant seek a remand for a preliminary examination and the prosecutor agreed that a remand was necessary. On this record, defendant is not entitled to relief.

### III. COMMENTARY ON VICTIM FEAR

Defendant also asserts that he was denied a fair trial by the prosecutor commenting during opening statement and the deputy warden testifying that defendant's fellow inmate and the victim

---

[1] This opinion uses the new parenthetical "cleaned up" to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

of the felonious assault likely would not be cooperative. The prosecutor and witness "clearly implied," defendant contends, that the witness was afraid of defendant.

During opening statement, the prosecutor advised the jury that Anthony Michael Ashley was still a prison inmate and would be transported to the court for the second day of trial to testify that defendant assaulted him. The prosecutor continued:

> Straight up I am going to tell you that we don't anticipate Mr. Ashley to be a very cooperative person. That world - - and I touched on it in voir dire, or asked about it - - but I think the people that are familiar with that world know that it's a world that a lot of us can't, and don't comprehend in our regular day to day types things. A lot of things don't get talked about for whatever reason. Be it survival, be it whatever. But we don't anticipate Mr. Ashley will be cooperative.

Defendant did not object to this statement.

The prosecution's first witness was Deputy Warden Tod McLean. The warden led the investigation into the assault at the prison and interviewed the witnesses. At trial, the following colloquy occurred:

> *Q.* . . . In the course of your duties are you familiar with protocol, either formally or informally, as to how inmates . . . are . . . trained or instructed to act a certain way if they have been assaulted and don't want to participate or retaliate?
>
> *A.* Probably 99 percent of the time a prisoner who is assaulted, or has been assaulted, or been involved in anything, they are not going to participate in an investigation. They are not going to cooperate. They are not going to give any information. And they are not going to want to testify.
>
> *Q.* I am speaking to the assault itself. In other words, obviously, just by process of deduction there are some inmates that when they are assaulted will stand their ground so to speak and fight back, correct?
>
> * * *
>
> *A.* Yes. Yes.
>
> *Q.* In the event that they don't, in the event that they don't want to participate, are there any, either customary or formal procedures, that they employ with respect to getting staff's attention or - -

Defense counsel objected to this line of questioning as "speculative." The court sustained the objection.

We review prosecutorial misconduct claims to determine whether the defendant was denied a fair and impartial trial. *Ackerman*, 257 Mich App at 448. In doing so, we must remember that prosecutors have wide latitude in making their arguments. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). The prosecutor may argue the evidence and all reasonable inferences from

the evidence. *Id.* And the prosecutor may state the facts that will be proven at trial during opening statement. *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010).

The prosecutor properly asserted in opening statement that he expected Ashley to be a hostile witness and intended to present facts to explain Ashley's attitude. When Ashley took the stand on the second day of trial, he testified that he did not know defendant, did not know who hit him, and would not be able to identify his assailant. Ashley's testimony was much as the prosecutor expected.

However, the prosecutor did not actually elicit testimony to explain Ashley's motivation for failing to cooperate. Rather, the prosecutor questioned McLean about how an inmate could alert a prison employee if he was being attacked and did not want to fight back to defend himself. The warden gave a nonresponsive answer indicating that approximately 99% of inmates would not cooperate in an investigation after being assaulted. The prosecutor had brought the warden back to his actual question by the time defense counsel objected. "As a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). Even if the prosecutor had intended to broach this issue with the warden (as suggested in opening statement), the trial court had yet to rule on its admissibility at that time. A prosecutor does not engage in misconduct by commenting on evidence in opening where the court has not yet determined its admissibility. *People v Taylor*, 275 Mich App 177, 185; 737 NW2d 790 (2007). Under the circumstances, defendant's challenges lack merit.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant further contends that the prosecutor presented insufficient evidence to support his convictions on two counts of assaulting a prison employee. Specifically, defendant contends that the evidence did not establish that he "had the necessary intent and ability or apparent ability to" commit the charged acts. We review de novo a defendant's challenge to the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution to determine if the prosecutor established the elements of the offense beyond a reasonable doubt. *People v Henderson*, 306 Mich App 1, 8-9; 854 NW2d 234 (2014).

MCL 750.197c(1) proscribes the assault of a prison employee by an inmate as follows:

> A person lawfully imprisoned in a jail, other place of confinement established by law for any term, or lawfully imprisoned for any purpose at any other place, . . . who . . . through the use of violence, threats of violence or dangerous weapons, assaults an employee of the place of confinement or other custodian knowing the person to be an employee or custodian . . . is guilty of a felony. . . .

"An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 235; 701 NW2d 136 (2005). Battery is defined as "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v Reeves*, 458 Mich 236, 240 n 4; 580 NW2d 433 (1998).

The prosecutor presented evidence that defendant used violence in an attempt to commit a battery against Officers Masters and Swartz and that they reasonably feared an imminent battery. Officer Swartz testified that defendant was still holding his makeshift weapon when the officers approached. Officer Swartz further described that defendant "started swinging on us with his fists," forcing the officers to "back[] up." Officer Masters testified that defendant dropped his weapon as the officers approached. Defendant swung his right arm at the officers. Officer Justice similarly testified that defendant "was swinging at the officers, not complying, not responding." Officer Justice did not know if defendant was holding the padlock weapon as he swung at the officers, but confirmed from the video evidence that defendant was empty handed. Officer Justice "was not hit though." Moreover, the jury reviewed the surveillance footage and still shots of the incident and could draw their own conclusions about defendant's intent and the officers' reactions.

The testimonial evidence supported that defendant swung his arm at the officers in an attempt to strike them. This was an act of violence toward the prison employees. The evidence also supports that the officers had reasonable apprehension of an immediate battery as they were required to take evasive actions to avoid being struck. This sufficed to support defendant's convictions and he is not entitled to relief.

## V. WITNESS COMMENTARY ON VIDEO EVIDENCE

Finally, defendant contends that the prosecutor usurped the fact-finding function of the jury by asking the witnesses to provide narratives of the events depicted in the surveillance footage played for the jury. The prosecutor played the video and showed still shots during the testimony of Warden McLean, Officer Swartz, Officer Masters, and Officer Justice. Each identified the individuals depicted, described the placement of the individuals, and narrated what was occurring. Defendant asserts, "The jury was capable of seeing the video and deciding for themselves what it showed," and that the officers' testimony interfered with the jury's duties. As defendant failed to object below, our review is limited to plain error affecting defendant's substantial rights. *People v Jones*, 468 Mich 345, 354-355; 662 NW2d 376 (2003).

This Court has considered the issue of witness testimony about a person's identity in video evidence before. In *People v Fomby*, 300 Mich App 46, 48-53; 831 NW2d 887 (2013), we held that the trial court did not err when it allowed a video expert witness to testify as a lay witness in making an identification. We noted that the witness was testifying on the basis of his perception of the video, and he was involved in editing the video. *Id.* at 50-51. We also determined that the testimony was helpful to the jury because six hours of surveillance video had been distilled down by the witness, and the officer's testimony helped the jury discern the events depicted. *Id.* at 51-52.

In *People v Perkins*, 314 Mich App 140, 161-162; 885 NW2d 900 (2016),[2] on the other hand, we determined that the testimony of a witness based solely on his review of security camera footage "invaded the province of the jury" because there was no reason to believe that the witness was more likely to correctly identify the person than the jury. We noted that nothing about the images necessitated the witness's opinion. *Id.* at 162.

Defendant's argument in this case is unavailing because Officers Justice, Masters, and Swartz had personal knowledge of the incident.[3] Unlike the witnesses in *Fomby* and *Perkins*, the officers were directly involved in the incident recorded by the surveillance footage and could testify based on first-hand, personal knowledge. A lay witness under MRE 701 is allowed to form opinions and inferences that are rationally based on their perceptions and that are helpful to the jury's understanding of the issue. In *Perkins*, the witness's testimony was impermissible because the witness did not personally observe the events; therefore, the jury was as capable as the witness of reaching a conclusion concerning the identity of the person in the video. *Perkins*, 314 Mich App at 161-162. In this case, because the officers were directly involved in the incident, they were *better able* than the jurors to identify defendant in the video. The witness testimony was admissible under MRE 701 as it could assist the jury in understanding the footage.

We affirm.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly

---

[2] This case was superseded in part, on other grounds, by *People v Hyatt*, 315 Mich App 368 (2016), which was itself affirmed in part and reversed in part, on other grounds, by *People v Skinner*, 502 Mich 89; 917 NW2d 292 (2018).

[3] Although Warden McLean was not present during the events, his testimony was merely cumulative of the other officers' testimony and does not demand relief.