*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER EARL KLINE,

        Defendant-Appellant.

UNPUBLISHED
March 17, 2022

No. 355206
Shiawassee Circuit Court
LC No. 17-001073-FH

Before: REDFORD, P.J., and SAWYER and MURRAY, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's denial of his motion for relief from judgment. We affirm.

In 2017, defendant pleaded guilty to a charge of witness intimidation, MCL 750.122(7)(b), and the trial court sentenced defendant, as a second habitual offender, MCL 769.10, to serve a departure sentence of 96 to 180 months in prison. After the trial court denied his motion to withdraw his plea or for resentencing, defendant filed an application for delayed leave in this Court, which denied the application for "lack of merit in the grounds presented." *People v Kline*, unpublished order of the Court of Appeals, issued March 4, 2019 (Docket No. 347318). Defendant's motion for relief from judgment, which raised additional sentencing issues and asserted ineffective assistance of counsel, and this appeal of the trial court's denial of the motion, followed.

## I. STANDARDS OF REVIEW

This Court reviews for an abuse of discretion the decision of a trial court regarding a motion for relief from judgment. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). Likewise, a trial court's decision whether to hold an evidentiary hearing is also reviewed for an

---

[1] *People v Kline*, unpublished order of the Court of Appeals, entered March 18, 2021 (Docket No. 355206).

abuse of discretion. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Swain*, 288 Mich App at 628. "[T]he proper interpretation and application of a court rule is a question of law that is reviewed de novo." *Id.* at 646-647. A trial court's findings of facts supporting its decision on a motion for relief from judgment are reviewed for clear error. *People v Kasben*, 324 Mich App 1, 7; 919 NW2d 463 (2018). A factual finding is clearly erroneous if it leaves the Court with a firm and definite conviction that a mistake was made. *People v Steele*, 292 Mich App 308, 313; 806 NW2d 753 (2011).

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Review of a departure sentence for reasonableness calls for application of the proportionality test. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). The trial court's factual determinations at sentencing are reviewed for clear error, and the findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

## II. SENTENCING

Defendant first argues that the trial court erred by stating that it could not properly grant relief from judgment in connection with defendant's sentencing issues because defendant had previously raised the same issues on appeal, which this Court rejected on their merits. The court cited MCR 6.508(D)(2), which states in part that a trial court "may not grant relief to the defendant" when the motion "alleges grounds for relief which were decided against the defendant in a prior appeal . . . ." We agree with defendant that his current sentencing issues differ substantially from those he raised in his earlier appeal, and thus that MCR 6.508(D)(2) is of questionable applicability. However, we conclude that any error in the trial court's invocation of that rule was harmless, because the court went on to consider and decide defendant's new sentencing issues.

The recommended range for defendant's minimum sentence under the sentencing guidelines was 29 to 71 months, and thus the defendant's minimum sentence of 96 months constituted an upward departure. Defendant argues that the trial court erred by basing the departure sentence on inaccurate information.

A sentencing court must consult the sentencing guidelines, calculate the recommended sentencing range, and take that range into account. MCR 6.425(D); *Lockridge*, 498 Mich at 391-392. However, the court is not compelled to impose a minimum sentence within the guidelines range. *Id.* at 365. A sentencing court departing from the guidelines range need not state substantial and compelling reasons for doing so, but the resulting sentence must be reasonable. *Id.* at 392.

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). "[A] sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). See also *People v Sharp*, 192 Mich App 501, 509-510; 481 NW2d 773 (1992) ("the use of inaccurate information at sentencing may violate defendant's right to due process").

Defendant's first claim of inaccuracy concerns the trial court's statement "that it could have sentenced [defendant] to an additional '2,511 days in jail, or nearly seven years' for repeated acts, which the Court regarded as contempt of court." The trial court was referring to the 27 times that defendant violated a personal protection order by telephoning a witness from jail. Defendant correctly notes that concurrent sentencing is the norm unless there is specific statutory authorization for consecutive sentencing. See *People v Chambers*, 430 Mich 217, 222; 421 NW2d 903 (1988). The contempt statute, MCL 600.1715, does not provide for consecutive sentencing. Therefore, if defendant were in fact facing 27 convictions of contempt of court, he would not be facing 27 consecutive sentences as a result. Accordingly, to the extent that the trial court suggested that a calculation of days from hypothetical consecutive contempt sentences was relevant to defendant's sentence, it clearly erred.

However, the trial court did not state that it was basing its sentence on its calculation of contempt of court sentences, and in fact clarified that its reference to multiple contempt sentences was "rhetorical flourish." The court's observation that each contempt conviction *could* have subjected defendant to additional incarceration was a part of the trial court's discussion of defendant's extensive history of legal entanglements, and how the guidelines account for other convictions. The sentencing offense was witness intimidation, and the trial court was discussing how the seriousness of other crimes indicated defendant's lack of regard for the judicial system. The court explained as follows:

> The court reached its chosen sentence by noting the multiple instances of defendant's conduct that attempted to interfere with the administration of justice. The guidelines assess this conduct at OV 19, MCL 777.49. Under this variable (and at the time of sentencing), the Court assesses 10 points when the offender otherwise interfered with or attempted to interfere with the administration of justice. The guidelines do not assess points for repeated instances of conduct. Thus, whether a Defendant engaged in such conduct once or multiple times, the Court may only assess 10 points regardless of the underlying circumstances. Given the number of defendant's efforts to interfere with the justice system, the Court found the guidelines recommendation unreasonable as applied to OV 19. If the Court could have scored points for each act relevant to OV 19, defendant would have placed into the highest level of the offense variables. This suggested to the Court a range of sentences it found more proportionate to Defendant and his criminal activity.

The trial court well explained how it considered defendant's contemptuous conduct. The court acknowledged that "[t]he guidelines generally consider each offender's criminal history and the circumstances of the sentencing offense," but that "the general nature of that consideration can introduce distortions when applied to a particular Defendant." The court than went on to discuss defendant's criminal history, including his contacting a witness in violation of a protection order. The court detailed 23 prior misdemeanor convictions, three felony convictions, the charges dismissed in the plea deal, defendant's violating bond by not appearing at his sentencing, defendant's misrepresenting his substance abuse, and the sentencing offense of witness intimidation in connection with 27 calls from jail. After that recitation, the court reiterated the purpose of listing defendant's legal indiscretions, including the 27 instances of contacting the witness despite a protection order, as follows:

The guidelines only permit the Court to score ten (10) points for that conduct, and ten (10) points isn't enough. I'm not sure one hundred (100) points would be enough to account for your massive, repeated, persistent contempt of this legal system.

[Defendant], you think the rules don't apply to you, and you demonstrate that with nearly every action that you take. Those factors are not accounted for in the guidelines, and the Court finds that they warrant an upward departure.

Therefore, even though the trial court exaggerated the number of days of incarceration that defendant might have earned if he had been prosecuted for contempt over his phone calls to a witness in violation of a protection order, it is apparent that the court did not rely on any such calculation when determining defendant's sentence. Instead, the court was thorough when detailing its reasoning for the departure sentence, emphasizing the extent that defendant's behavior had interfered with the administration of justice. For these reasons, we are satisfied that the court determined its sentence on the basis of the sentencing offense, rather than in relation to any actual or hypothetical sentences for other crimes defendant had committed.

Defendant also asserts that the trial court erred when it announced that its departure sentence was "consistent with what you would see had you maxed out on the offense variables, which the court considers appropriate and reasonable under these facts." Defendant protests that his harshest guidelines sentence with all offense variables scored at their maximums would have been 95 months, rather than the 96-month sentence that the trial court imposed.

The trial court addressed defendant's claim as follows:

Defendant also argues the court's statement that its chosen sentence is "consistent with" what the guidelines would recommend if Defendant had scored into the highest level of the Offense Variables (OVs). Defendant correctly notes that the Court imposed a sentence of 96 months of incarceration, while the ceiling of defendant's guideline range (as a second-offense habitual offender) was only 95 months. This is the reason the Court said "consistent" and not "equal."

The court then went on to discuss how the offense variables were inadequate to reflect the extent that defendant's behavior interfered with the administration of justice.

Our review of the sentencing transcript leaves us assured that the trial court did not rely on the highest possible sentence that could be assessed if each offense variable had the maximum score in order to determine defendant's sentence. As discussed, the trial court was clear that its sentence was based largely on the extent of defendant's illegal conduct, and how the offense variables did not adequately address some of defendant's behavior. After discussing defendant's conduct, and referencing the offense variables, the trial court provided the following additional reasoning:

It's clear to the court that you've had numerous opportunities at rehabilitation and they've all failed.

The court wants this sentence to emphasize punishment and deterrence to others similarly situated.

The court can best achieve its goals by imposing a prolonged period of separation from society.

But, before imposing sentence, the court notes that it would depart upward to reach its chosen sentence even if the guidelines were scored differently, or only if one of the factors listed by the Court were present.

It is thus apparent that the trial court did not strictly rely on the guidelines, including what they would have recommended had all variables had maximum scores, to determine defendant's minimum sentence. The trial court referenced a theoretical 95-month guidelines sentence, but also determined that the guidelines were inadequate to address defendant's circumstances. The trial court did not promise a sentence equal to the referenced 95-month one, but rather explained that its 96-month sentence was near what the guidelines would have recommended in different circumstances. It was not error to consider instructive what the guidelines would have indicated if all offense variables were scored at their maximums.

The reasonableness of a sentence is determined by evaluating whether a sentence violated the principle of proportionality, which requires " 'sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 474, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). This Court recited several factors for consideration regarding the proportionality of a sentence:

> (1) the seriousness of the offense, (2) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation, and (3) factors that were inadequately considered by the guidelines in a particular case. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (citations omitted).]

A trial court should also take " 'into account the nature of the offense and the background of the offender.' " *Id.* at 45, quoting *Milbourn*, 435 Mich at 651.

In this case, as detailed, the trial court justified its sentence with lengthy discussion of the circumstances of this case, as well as of defendant's interactions with the court system, and did not attempt to justify its sentence on the basis of hypothetical sentences that could be imposed in other circumstances. The trial court discussed factors mentioned in *Steanhouse*, 313 Mich App at 46, such as the seriousness of the offense, as well as factors not accounted for in the guidelines, relating in part to defendant's low potential for rehabilitation, as well as defendant's repeated violations of the trial court's orders. For these reasons, the court justified its departure sentence as proportionate under the circumstances.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the trial court should have held a hearing to develop defendant's claim that his appointed trial attorney provided ineffective assistance because he acted unethically by requesting money from defendant's family. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). An attorney's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id.* The same legal standards apply for evaluating ineffective assistance claims regarding trial counsel and appellate counsel. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014).

In defendant's motion for relief, he wrote that he

was denied his right [to] effective assistance of counsel where his court appointed trial attorney refused to perform tasks that trial counsel himself deemed appropriate for [defendant's] representation, on the grounds that [defendant's] family was unable to compensate counsel above and beyond the amount provided by the County of Shiawassee. Trial counsel's grossly unethical conduct in demanding payment from a court appointed client undermines any claim that his advice to [defendant] was borne out of sound trial strategy.

Attached to defendant's motion was a notarized letter from his grandmother which detailed that she provided $500 in cash to defendant's trial attorney, and informed him that she did not have any more money. The grandmother stated that defendant's trial attorney responded that "more money would always help," and failed to provide a receipt for the original payment despite her requests for one at each court appearance. Defendant also provided an affidavit stating that he did not initially know that his grandmother provided money to his trial attorney. Defendant further explained as follows:

[Trial counsel] did advise me that the more money I could come up with, the better the outcome would be at court. I was left with the impression that my attorney didn't even want to talk to me unless I would tell him I would get money to him next time we go to court. I conveyed this sentiment to my Grandmother who was then exploited by my attorney. For [i]nstance, there was a total lack of interests in my case. He never took notes and had me go get statements from witnesses for my defense. The day I was bonded out, the first time I've ever talked to [trial counsel], he said "meet me at my office and bring money."

Defendant added that he told both of his appellate attorneys about the payment:

After conviction, I also specifically told my first appellate attorney . . . that [trial counsel] had taken money off the record, and she made it seem like that was an important issue. Yet, appellate counsel never utilized this as a reason for appeal. In addition, I informed my second appellate attorney . . . and he was adamant that

[trial counsel's] taking money as a public defender and member of the trial court's drug court program was grossly unethical and morally wrong. In fact, appellate counsel stated he was going to help me file a grievance on [trial counsel]. All in all, both attorneys on my first tier of appeal knew about the money taken by trial counsel but each attorney neglected to develop a record on it.

The trial court denied defendant's motion for relief from judgment and an evidentiary hearing on the grounds that defendant had not established good cause for not raising the issue in his direct appeal, or that he was prejudiced by trial counsel's representation. Following an appeal, a trial court may not grant relief from judgment for reasons, other than jurisdictional defects, that "could have been raised on appeal" unless the defendant demonstrates "good cause" for the failure to do so, along with "actual prejudice." MCR 6.508(D)(3); *People v Clark*, 274 Mich App 248, 253-254; 732 NW2d 605 (2007).

"A defendant may establish good cause for not raising an argument for relief sooner by showing that his appellate attorney rendered ineffective assistance by failing to raise the issue in a proper post-trial motion or first-tier appeal." *People v Gardner*, 482 Mich 41, 49 n 11; 753 NW2d 78 (2008). Defendant's affidavit asserted that he informed his appellate counsel that his grand-mother had paid his appointed trial attorney additional funds, but neither appellate advocate made issue of whether anything related to trial counsel's alleged demand of money from defendant's family compromised counsel's plea negotiations or legal advice, or otherwise negatively impacted counsel's performance for defendant. Regardless, we agree with the trial court that defendant has failed to show that he was prejudiced by the alleged impropriety.

"Actual prejudice" in a case involving a guilty plea occurs when "the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand." MCR 6.508(D)(3)(b)(ii). In this case, defendant argued in his motion for relief from judgment that there was a "reasonable probability" that he would not have relied on trial counsel's advice if he had known about counsel's unethical conduct. However, defendant does not argue in his brief on appeal that his plea was involuntary because of the alleged misconduct of his trial attorney, nor does he assert in his brief or affidavit that the alleged misconduct caused him to accept a plea that he now disavows. Further, defendant has provided no offer of proof in support of any contention that his plea was involuntary. Thus, defendant has failed to satisfy the prejudice requirement for either his claim for relief under MCR 6.508(D)(3), or in his underlying claim of ineffective assistance.

Affirmed.

/s/ James Robert Redford
/s/ David H. Sawyer
/s/ Christopher M. Murray