*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PAGE, Minors.

UNPUBLISHED
February 18, 2026
12:10 PM

No. 374515
Muskegon Circuit Court
Family Division
LC No. 2020-001544-NA

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

The trial court terminated respondent-mother's parental rights to the minor children, GP and RP, under MCL 712A.19b(3)(c)(*i*) (conditions leading to the adjudication continue to exist with no reasonable likelihood of rectification); (g) (failure to provide proper care and custody); and (j) (reasonable likelihood that child will be harmed if returned to respondent's home).[1] Respondent-mother argues that the trial court erred by terminating her rights and that she received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

The Department of Health and Human Services (DHHS) petitioned to remove GP and RP from respondents in April 2020. At the time, GP was two years old, and RP was one year old. Respondents had a history of domestic violence, and the DHHS alleged additional concerns specific to respondent-mother, including neglect, criminality, homelessness/instability, and substance use. The children were removed, and, in May 2020, respondent-mother pleaded to having a history of housing instability and domestic violence. The trial court issued its initial dispositional order as to respondent-mother in June 2020. The DHHS initially placed the children with their great-grandmother, however, because of the great-grandmother's health problems the

---

[1] The trial court also terminated respondent-father's parental rights, but he is not a party to this appeal.

children were removed. Around December 2022, the children were placed with a paternal uncle and his partner.

Throughout the years of proceedings, there were ongoing concerns about respondent-mother's relationship with Silas Burks. The children expressed significant fear of Burks, and there were reports of domestic violence between Burks and respondent-mother. During the periods of time when she had unsupervised visitation with her children, respondent-mother denied being in contact with Burks; however, the children reported seeing Burks and made allegations about Burks being violent toward respondent-mother and GP. Although not substantiated, the children also made allegations of sexual abuse against Burks. The children had behavioral challenges throughout the case and engaged in counseling services.

Respondent-mother's engagement with services was sporadic. Although she completed some parenting classes, she repeatedly began and discontinued counseling. She maintained employment for much of the case, but she changed jobs frequently and experienced multiple housing moves. In October 2023, the trial court suspended respondent-mother's parenting time after the children continued to report contact with Burks. The DHHS had learned that the great-grandmother called 911 in August 2023 because Burks came to the home, an incident respondent-mother failed to report to the caseworker. With regard to substance abuse, for much of the proceedings, respondent-mother only tested positive for marijuana use, which she admitted. However, she missed most of her drug screens, and, in February 2024, respondent-mother tested positive for cocaine. At first, respondent-mother denied using cocaine. She later admitted to the first positive test and denied subsequent positive tests. Also in February 2024, respondent-mother and the children began participating in family counseling and respondent-mother's parenting time resumed. However, in June 2024, the DHHS moved to suspend parenting time again after respondent-mother and Burks were seen together more than one time. Ultimately, in September 2024, the DHHS filed a petition seeking termination of respondent-mother's parental rights.

At the termination hearing, the children's therapist, Tamara Haase, testified as an expert in trauma and play therapy. Respondent-mother's counsel did not object to the trial court recognizing Haase as an expert. Haase was a licensed therapist with a master's degree, and she had been previously recognized as an expert witness in the trial court. Because of the children's ages, Haase engaged in play therapy with them. When Haase began to work with GP, GP was consistently dysregulated. Over time, Haase saw a "marked improvement in [GP's] ability to regulate herself." Haase testified that GP had increased anxiety in April through June 2024. At that point, the children were starting visits with respondent-mother, which took place after their appointments with Haase. During this period, GP spoke about being nervous and scared about the visits, and Haase spent a lot of time helping GP process her thoughts and feelings. During a June 2024 appointment, Haase noted that GP appeared to be back to her baseline and was not nervous. After the session, Haase learned that GP was not having parenting time that day.

As to RP, Haase testified that RP would not engage in therapy at first. RP's play often involved her pretending that "she needed to lock the bad guy up." Initially, RP referred to the figure as "bad guy," but later identified him as Burks. In November 2023, RP talked about Burks trying "to put lava in her," and respondent-mother not helping her. When RP talked about the "lava," she gestured to her pelvic region. RP also spoke about Burk touching her pelvic area.

Additionally, RP reported Burks showing her guns and knives and telling her not tell anyone or he would hurt her.

Haase also testified that respondent-mother had gone to Haase's "office many times to ask about other things," and, eventually, Haase sought and obtained a personal-protection order to prohibit respondent-mother from contacting her. Haase testified that, in her professional opinion, the children were doing better since they stopped seeing respondent-mother. Although Haase testified that she generally believes removal is traumatic and reunification should be the goal when caregivers take appropriate steps to ensure safety, she nonetheless concluded that termination of respondent-mother's parental rights would be in the children's best interests.

At the conclusion of the hearing, the trial court terminated respondent-mother's parental rights. Specifically, the trial court determined that more than 182 days had elapsed since the initial disposition, and, although progress had been made, barriers to reunification still existed. The trial court further found that respondent-mother failed to provide proper care and custody for the children and that she would not be able to provide proper care and custody in a reasonable time. Moreover, there was a reasonable likelihood that the children would be harmed if returned to respondent-mother. The trial court also determined that the DHHS made reasonable efforts and that termination was in the children's best interests.

Respondent-mother now appeals.

## II. ANALYSIS

### A. STATUTORY GROUNDS

First, respondent-mother argues that the trial court erred by terminating her parental rights. We disagree.

We review for clear error a trial court's factual findings and determinations about statutory grounds. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). Clear error exists if this Court is left with a definite and firm conviction that the trial court made a mistake, "giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). To terminate parental rights, the trial court must find clear and convincing evidence of at least one statutory basis for termination under MCL 712A.19b(3).

A ground for termination exists under MCL 712A.19b(3)(c)(*i*) if 182 or more days have passed since the initial dispositional order, and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Termination is warranted under this statutory ground when "the totality of the evidence amply supports" the trial court's finding that the parent has not achieved "any meaningful change in the conditions" that led to the trial court exercising jurisdiction over the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

Indisputably, the children had been out of respondent-mother's care for significantly longer than 182 days. And the record clearly supported the trial court's determination that barriers continued to exist to reunification, including domestic violence and housing stability. We acknowledge that "it would be impermissible for a parent's parental rights to be terminated solely

because he or she was a victim of domestic violence." *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). But in this case, the trial court properly terminated respondent-mother's parental rights on the basis of respondent-mother's actions that harmed the children or exposed them to harm. See *id*. Respondent-mother was dishonest about her relationship with Burks. Moreover, GP disclosed that Burks threw her across the room, and RP reported that Burks "tried to put lava in her, and [respondent-mother] didn't help." The children were indisputably afraid of Burks. Respondent-mother never demonstrated that she fully understood what the children had experienced or the risks to which she had exposed them. Even as late as June 2024, over four years after the children's removal, respondent-mother was admittedly spending time with Burks. By that time, respondent-mother had engaged in some services, including individual and family counseling, and had been offered additional services. She also was told repeatedly not to be with Burks or allow the children around him. Yet, respondent-mother continued to prioritize that relationship over her children.

Additionally, the children's therapist, Haase, and the foster parents sought court protection because they feared respondent-mother's conduct. Although respondent-mother lived with the children's great-grandmother for a substantial period, she repeatedly moved and changed jobs during the proceedings and relocated again shortly before the termination hearing. As a result, domestic violence and housing instability continued to impede reunification. Respondent-mother also admitted to a single use of cocaine, and she claimed to have worked to reduce her marijuana use, but she never significantly addressed the concerns related to substance use. Given that the children had been out of respondent-mother's care for nearly five years by the time of the termination hearing, there was no reasonable likelihood that respondent-mother would be able to rectify the concerns in a reasonable time considering the children's ages. See *Williams*, 286 Mich App at 272-273. Therefore, the trial court did not err by terminating respondent-mother's rights under this statutory ground.

Next, a ground for termination exists under MCL 712A.19b(3)(j) if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." "[A] parent's failure to comply with the terms and conditions of his or her service is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711.

Termination was proper under this ground for many of the same reasons that were identified under MCL 712A.19b(3)(c)(*i*). Most notably, respondent-mother never addressed her pattern of exposing herself and her children to dangerous individuals. Respondent-mother maintained contact with Burks, whom the children feared, and she was dishonest with caseworkers and the trial court about those contacts. Moreover, the trial court did not improperly base its decision on respondent-mother being a victim of domestic violence. See *In re Plump*, 294 Mich App at 273. Instead, the trial court properly determined that there was a reasonable likelihood that the children would be harmed if returned to respondent-mother's care. Even if there remained a question about whether Burks had physically or sexually abused the children, they were plainly terrified of him and had been diagnosed with post-traumatic stress disorder. Respondent-mother also displayed ongoing aggressive conduct during the proceedings—including yelling at caregivers and agency staff at the courthouse—and, despite participating in some services over nearly five years, she did not show meaningful improvement. Her repeated dishonesty about contacts with Burks and her unwillingness to acknowledge the children's trauma demonstrated

-4-

that she was unlikely to protect them from future harm. Accordingly, the trial court did not err in terminating respondent-mother's parental rights.[2]

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, respondent-mother argues that her trial counsel was ineffective for failing to object to Haase being qualified as an expert and for failing to investigate evidence in support of her case. We disagree.

When no evidentiary hearing on the issue has been held, this Court reviews a claim of ineffective assistance of counsel for errors apparent on the record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 456 Mich 575, 579; 640 NW2d 246 (2002). We review for clear error a trial court's factual findings but review de novo questions of constitutional law. *In re Casto*, 344 Mich App 590, 610; 2 NW3d 102 (2022).

To establish a claim of ineffective assistance of counsel, a party must show that trial counsel was deficient and that the deficient performance was prejudicial. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Counsel's performance was deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The deficient performance was prejudicial if, but for the error, there was a reasonable probability that the outcome of the proceedings would have been different. *In re Casto*, 344 Mich App at 612. "The effective assistance of counsel is presumed, and a party claiming ineffective assistance bears a heavy burden of proving otherwise." *Id*.

Respondent-mother argues that Haase had conflicting therapeutic and forensic relationships. As petitioner argues on appeal, respondent-mother relies on one 1997 study but cites no legal authority showing Haase was improperly qualified as an expert. Even if it fell below an objective standard of reasonableness to fail to object, respondent-mother has not demonstrated that the trial court would or should have excluded Haase's expert testimony or that Haase's expert testimony prejudiced the outcome of the proceedings. There was significant evidence throughout the nearly five years of this case that the children experienced trauma in respondent-mother's care. Further, there was significant evidence that respondent-mother continued contact with Burks, despite a history of violence and the children's fear of him. Respondent-mother had not been honest about the children being exposed to violence in her care, nor had she shown an ability or willingness to keep the children safe from those risks. She had not only lost her unsupervised visitation, but her parenting time had been suspended. Even as late as June 2024, video evidence showed respondent-mother visiting with Burks directly after parenting time with the children.

Finally, respondent-mother argues on appeal that trial counsel failed to investigate the allegations about Burks or respondent-mother. Respondent-mother has not demonstrated what evidence would have helped her case, and she must demonstrate the factual predicate of her claim.

---

[2] Given our conclusions regarding these statutory grounds for termination, we need not address respondent-mother's arguments regarding MCL 712A.19b(3)(b) and (g). See *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Respondent-mother briefly notes on appeal that trial counsel did not call her counselor to testify, but she does not proffer what information the counselor would have shared or how that would have affected the outcome of the case when, by the time that respondent-mother started to see the counselor, the case had been open for several years. Trial counsel called witnesses and cross-examined petitioner's witnesses. Accordingly, there is no basis to find that his representation fell below an objective standard of reasonableness or prejudiced the outcome of the case.

Affirmed.

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado
/s/ Matthew S. Ackerman