*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 25, 2020

Plaintiff-Appellee,

v

No. 345343
Macomb Circuit Court
LC No. 2017-004255-FC

DAVID VAN HARRISON,

Defendant-Appellant.

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 345345
Macomb Circuit Court
LC No. 2017-004039-FH

DAVID VAN HARRISON,

Defendant-Appellant.

---

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

PER CURIAM.

In this case, consolidated below and on appeal, *People v Harrison*, unpublished order of the Court of Appeals, entered September 13, 2018 (Docket Nos. 345343; 345345), defendant was convicted of unarmed robbery, MCL 750.530, and armed robbery, MCL 750.529. He was sentenced in case number 2017-004039-FH as a fourth habitual offender, MCL 769.12, to 9.5 to 40 years for the unarmed robbery, and in case number 2017-004255-FC to 25 to 40 years for the armed robbery. Defendant appeals as of right. We affirm.

Defendant used a box cutter to rob Stephanie Thayer after approaching her in an urgent care facility parking lot. She was standing outside her car, smoking a cigarette and texting on her cell phone. Approximately two hours later, he approached Hallie Wilcoxson while she was sitting in a parked car in a store parking lot. He attempted to rob her. Four days later, defendant robbed

Kimberly Smith by grabbing money from her at an outside automated teller machine (ATM); she had just gotten out of her car in the bank parking lot.

## I. PERMISSIVE JOINDER

Defendant first argues that the trial court erred by granting plaintiff's motion to consolidate the cases involving the crimes against Thayer and Smith. For purposes of joinder of cases, this Court reviews whether the charges were related de novo as a question of law. *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014). This Court reviews a trial court's ultimate decision on a motion for joinder for an abuse of discretion. *Id.*, citing *People v Breidenbach*, 489 Mich 1, 14; 798 NW2d 738 (2011). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

The court rules authorize a trial court to "join offenses charged in two or more informations or indictments against a single defendant" where it is "appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense." MCR 6.120(B). Joinder is permitted where "the offenses are related." MCR 6.120(B)(1). To evaluate whether joinder is permissible, "a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). The rule defines "related offenses" as those that are based on either "the same conduct or transaction," "a series of connected acts," or "a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1)(a-c). "Other relevant factors" that a trial court may consider to determine whether joinder is appropriate are "the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial." MCR 6.120(B)(2).

In this case, the trial court concluded that defendant's charged crimes were related because they were part of a common scheme or plan. Crimes are "related" under MCR 6.120(B)(1)(c) where evidence demonstrates that a "defendant engaged in ongoing acts constituting parts of his overall scheme or plan." *People v Gaines*, 306 Mich App 289, 305; 856 NW2d 222 (2014), citing *Williams*, 483 Mich at 235.

Defendant robbed Thayer on October 4, 2017 at around 7:30 p.m. in the middle of a parking lot where she had stopped and gotten out of the vehicle. Thayer identified defendant as the man who suddenly approached her, asked her to stay quiet, and demanded money. After Thayer informed defendant that she did not carry cash, he pushed her against the car with his hands around her throat and threatened to slice her throat if she did not provide money. Thayer offered her purse, which was in the car, and defendant took the purse from the car and fled. Thayer's eight-year-old daughter was in the vehicle and saw that defendant was wearing rubber gloves and had a blue rectangular pocket knife with a retracted blade.

On October 8, 2017 around 9:00 a.m., Smith was robbed by a man she identified as defendant immediately after withdrawing cash from the ATM. Smith recalled that she parked in the empty parking lot and walked to the ATM, and that after she began her transaction she felt something hard behind her. Smith said that the money and wallet were in her hand when she was

trapped by arms around her waist and hands grasping her hands. She said that the robber grabbed her wallet and cash, and fled.

The robberies were in the same general area as evidenced by calls that defendant's phone made on the dates of the robberies. They used the same phone tower which was 1.86 miles from the site of Thayer's robbery and 2.74 miles from Smith's robbery. Notably, bank records revealed that defendant had negative balances during the time of the robberies, and a "state employee" testified that defendant had relapsed into drug use, which defendant confirmed during separate interviews with the detectives investigating each case.

The trial court reasoned that there was "a common thread in that all these robberies were singling out a very specific type of target, "that being a woman that appeared to be alone or had an eight-year-old son or child in the car and were close in time." It also concluded that the offenses were similar.

Defendant argues that the robberies were "not connected" and were "totally dissimilar" because the locations were different, only one involved a weapon, only one involved gloves, and one was in a lot and the other was at the ATM. Defendant also noted that one crime was not committed in order to aid the commission of the other crime. However, despite those differences, the evidence indicated that defendant's crimes were related because they consisted of "ongoing acts constituting parts of his overall scheme or plan."

The two robberies were in proximate geographic locations, and occurred within days of each other during a time in which defendant had a negative bank balance.[1] In both instances, defendant suddenly approached women who had recently left their vehicles while in a parking lot and were preoccupied with a task. Defendant used physical force on both woman in order to overcome any resistance to taking money and the wallet and purse, before fleeing. Defendant's acts of surprising women who had just left their vehicles, while they were distracted, during a discrete period of time in which he lacked money and had been abusing drugs, in proximate locations, and in order to rob them after using physical force to control or intimidate them, constituted a series of acts that demonstrated an overall scheme or plan to rob vulnerable women in a specific way.

Defendant states that joinder was inappropriate because the number of charges confused the jury, and witnesses were inconvenienced. However, there were only two charges joined, and there was no evidence of jury confusion. With regard to the witnesses, joinder would have been more convenient for the detectives, whose investigations overlapped, because they were required to testify only at one trial instead of two. Similarly, the victims only had to testify once but would have had to testify in one trial as a complainant and in another to provide evidence of defendant's

---

[1] MCR 6.120 does not require "the existence of temporal proximity between several offenses," but "permits joinder of offenses that were not committed at the same time but nevertheless constitute 'a series of connected acts or acts constituting part of a single scheme or plan.' " *Williams*, 483 Mich at 241.

other acts. None of the "other relevant factors" mentioned in MCR 6.120(B)(2) appear to indicate that joinder was inappropriate in this case. We find no abuse of discretion.

Defendant also argues that evidence of the uncharged act prejudiced him. Evidence of prior crimes by a defendant must be excluded, except as allowed by MRE 404(b), to avoid the danger of a conviction based on a defendant's history of misconduct. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998). MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

This list is not exclusive, *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000).

Wilcoxson identified defendant as the person who attempted to take her money and her purse on October 4, 2017, while she was waiting in an automobile in a parking lot. Wilcoxson testified that defendant entered the car, wearing gloves, and asked her for money and then her purse, but left when she refused to provide it. Defendant's uncharged attempted robbery of Wilcoxson is consistent with the plan or scheme of the charged robberies because it was on the same date as Thayer's robbery, and defendant approached a vulnerable individual suddenly in a parking lot while demanding money. The trial court concluded that evidence of the uncharged act was admissible as other bad acts evidence because it was relevant to an intent to rob and showed a common scheme.

Generally, to be admissible under MRE 404(b), bad acts evidence (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not have a probative value substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004), citing *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993). A proper purpose is one other than establishing the defendant's character to show his propensity to commit the crime. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 725 (2005).

The evidence of the attempted robbery was relevant and used for a proper purpose because defendant was charged with robbery, and the evidence demonstrated defendant's common plan and consistent style of executing the robberies. Defendant argues that the evidence was unfairly prejudicial. Evidence may be excluded under MRE 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *People v Watkins,* 491 Mich 450, 477, 481; 818 NW2d 296 (2012). Unfair prejudice occurs when there is a tendency for the evidence "to be given undue or preemptive weight" by the jury, or when it "would be inequitable to allow use" of the evidence. *People v Wilson*, 252 Mich App 390, 398; 652 NW2d 488 (2002), citing *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995).

In *Watkins,* 491 Mich at 487-488, the Court enumerated several considerations that might lead a trial court to exclude evidence as unfairly prejudicial under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.

In this case, the evidence was admitted because of the similarity between the crimes and the temporal proximity of the acts to each other. Defendant's argument regarding prejudice is that the number of incidents implied his guilt. However, " '[u]nfair prejudice' does not mean 'damaging.' " *Lewis v Legrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003). Evidence that is unfairly prejudicial goes beyond the merits of the case to inject issues broader than the defendant's guilt or innocence, such as "bias, sympathy, anger, or shock." *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005).

None of the factors discussed in *Watkins* indicates that the testimony was unfairly prejudicial. There is no indication that the evidence "injected issues broader than the defendant's guilt or innocence" into consideration. Additionally, there was no indication of a danger of confusion of the issues, misleading the jury, or creating too much empathy, which could have required exclusion of the evidence under MRE 403. The evidence was strongly probative as it demonstrated the likelihood that defendant had a consistent method of robbing vulnerable women in the given time frame. Although the evidence was prejudicial, it was not unfairly prejudicial.

## II. IDENTIFICATION TESTIMONY

Defendant next argues that the pretrial identifications of defendant as the perpetrator by Thayer, her daughter, Wilcoxson, and Smith were unreliable, that evidence of them should have been excluded, and that there was not an independent basis for identifications at trial. Defendant did not object to this evidence. Unpreserved claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* Defendant also claims that trial counsel provided ineffective assistance by failing to object. He also failed to raise this issue in the trial court. Claims of ineffective assistance of counsel that are unpreserved are reviewed for errors apparent on the record. *People v Unger* (*On Remand*), 278 Mich App 210, 253; 749 NW2d 272 (2008). The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment right to counsel, see US Const, Am VI, is reviewed de novo. *Id.* at 242. We do not find any issues with the identifications and, coextensively, find no ineffective assistance of counsel.

"Identity of the defendant is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), citing *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976). A defendant's due-process rights are violated by the use of an "unduly suggestive" identification procedure. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993), citing

*Stovall v Denno*, 388 US 293, 302; 87 S Ct 1967; 18 L Ed 2d 1199 (1967). A procedure used in a lineup or photographic identification is unduly suggestive in violation of due-process guarantees when it produces "a substantial likelihood of misidentification." *People v McDade*, 301 Mich App 343, 357; 836 NW2d 266 (2013); *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998).

A photo of defendant from the Secretary of State office was inserted into a computer program that generated five other photos of men with similar facial features. The black-and-white photo array was shown to Smith eight days after her robbery. Smith selected defendant from the lineup. She said that the identification was based on his facial features and that she was 90 percent sure of her choice.

Nine days after Thayer was robbed, she was shown a photographic lineup that included photographs of defendant and five other men with similar features. Thayer selected defendant's photo and said that she was 90 percent sure that the photo was of the man who robbed her. Thayer said that she recognized defendant immediately, knew it was defendant because she felt a reaction throughout her body, and testified that the other photos did not look like defendant.

Thayer's nine-year-old daughter selected defendant and one other man from this photographic lineup. She indicated that her choices were based on skin tone; she did not see the robber's face. Ultimately, she concluded that the man other than defendant whom she selected was most likely the robber.

Wilcoxson recalled that a detective came to her home 14 days after her robbery to show her a photographic lineup. She identified defendant with at least 80-percent confidence.

Defendant argues that the identifications were unreliable because "pretrial identification was based solely on either skin tone and suspect photo array or uncertainty of the identification." Factors that a court should consider to determine the "likelihood of misidentification" include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Kurylczyk*, 443 Mich at 306, quoting *Neil v Biggers*, 409 US 188, 196; 93 S Ct 375; 34 L Ed 2d 401 (1972).

There was little uncertainty in the witnesses' identifications of defendant in the photographic lineups. Although the selection of Thayer's daughter was based on skin tone, she concluded that another person in the lineup was more likely to have been the perpetrator. With regard to Thayer's identification, the entirety of her testimony indicated that her identification of defendant was not the result of an improperly suggestive procedure. Thayer explained that her 90-percent estimate was premised on a "tiny bit" of doubt, so she looked through the photos again to ensure that she had selected the right photograph. Thayer said that she recognized defendant immediately, because "I had an adrenaline rush through my entire body. It was like it was, I was reliving that night over again when I seen the picture." Thayer definitively indicated that she had identified defendant based on her experience with him, and stated that, upon seeing defendant's photo, "I knew it was him. I felt it in my entire body. It was like an adrenaline rush that just rushed through and there was like very little doubt that it was not him." That Smith and Wilcoxson were less than 100 percent sure of their identifications was not evidence that their identifications

were uncertain. Wilcoxson testified that she was confident about selecting defendant "[b]ecause I knew that face, it just didn't get out of my mind, so I remember him, you know." She explained that she said she was at least 80-percent certain because defendant was not wearing glasses and gloves in the photo as he did during the robbery. She said that her certainty of identification was based on having stared at defendant's face throughout her encounter with him so that he would know that she was not intimidated. Smith explained that her identification was based on recognizing defendant's facial features, noting that the photograph could not show defendant's lighter complexion because it was in black and white. Smith testified at trial that she was 100 percent certain that she had identified defendant in the lineup, although she may have reported to the detective at the time that she was only 90 percent certain.

Defendant has not demonstrated that his identification by the witnesses in photographic lineups were unreliable. Notably, defendant makes no argument, other than the witnesses' quantification of their certainty, that the identifications were unreliable, or that the procedures used were suggestive.

Defendant also argues that the in-court identifications of defendant by Smith and Thayer were not reliable because the witnesses did not have a sufficient independent basis on which to identify defendant. An in-court identification of the defendant by the same witness whose previous identification had been obtained with unduly suggestive procedures may be permitted where "an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303. However, "there was no impropriety in [the] pretrial identifications of defendant." Thus, establishing an independent basis for an in-court identification was not necessary. *People v McElhaney*, 215 Mich App 269; 545 NW2d 18 (1996). "The need to establish an independent basis for an in-court identification only arises where the pretrial identification is tainted by improper procedure or unduly suggestive comments." *People v Laidlaw*, 169 Mich App 84, 92; 425 NW2d 738 (1988).

Defendant also argues that his trial counsel provided ineffective assistance by failing to challenge Smith's or Thayer's identifications. A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This right "encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To demonstrate an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id*. The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Defendant has not demonstrated that an objection to any identification testimony would have been meritorious because there was no evidence that the identifications were unreliable. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), citing *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

## III. PAROLE OFFICER TESTIMONY

Lastly, defendant argues in a Standard 4 brief that the testimony of Yasheika Davis should not have been admitted. Defendant did not object to her testimony. Again, unpreserved claims are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

Davis testified that she knew defendant through her work as a state employee and had spoken to him about 15 times over the course of more than a year. She explained that she had contacted the police after she had reviewed a BOL (be on the lookout) bulletin, thinking that the vehicle and person described matched defendant and his vehicle. Davis additionally testified that defendant had relapsed into drug use, and that he was "jittery" on October 10, 2017, during their meeting.

Defendant argues that this testimony was inflammatory and prejudicial because the jury could have inferred from Davis's role as a state employee and her knowledge of BOL bulletins that she was a part of law enforcement and that defendant had a history of crimes. Davis was apparently defendant's parole officer. As previously stated, evidence of prior crimes by a defendant must be excluded, except as allowed by MRE 404(b), to avoid the danger of a conviction based on a defendant's history of misconduct. *Starr*, 457 Mich at 495. However, Davis's testimony was offered to explain how the investigation of the crimes progressed, and was relevant to show how the police identified defendant as a suspect in the robberies. Also, evidence about the drug use was relevant to defendant's possible motivation to steal money. Defendant argues that it nonetheless should have been excluded under MRE 403, asserting that "its probative value [wa]s substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Watkins,* 491 Mich at 477, 481. Unfair prejudice occurs when there is a tendency for the evidence "to be given undue or preemptive weight by the jury," or when it "would be inequitable to allow use of the evidence." *Wilson*, 252 Mich App at 398.

Notably, no evidence of a prior crime by defendant was exposed to the jury. Davis's role as a state employee who had contact with defendant may have invited speculation among the jurors about her position, but it did not reveal that defendant had a history of criminal conduct. During deliberations, the jury asked about the relationship between defendant and Davis, indicating that it had not definitively inferred Davis's position, before the trial judge informed the jury that it could only consider evidence of record and could not speculate about Davis's position.

There is no indication that the testimony of Davis was unfairly prejudicial. There is no indication that the evidence "injected issues broader than the defendant's guilt or innocence" into the case. Additionally, there was no indication of a danger of confusion of the issues, misleading the jury, or creating too much empathy, which could have required exclusion of the evidence under MRE 403. The evidence had some probative value to explain the direction of the investigation, and was not unfairly prejudicial.

Defendant argues that his trial counsel provided ineffective assistance by failing to object to Davis's testimony. Davis' testimony was discussed with reference to the overlap between defendant's cases as it pertained to the joinder issue, with defendant's trial counsel arguing that there would not have to be overlap with respect to Davis because she was a nonessential witness.

In the course of this discussion, the prosecutor acknowledged that defendant's parole should not be mentioned. Defendant has not identified grounds to exclude Davis' testimony. There is no basis to conclude that an objection to her testimony would have been meritorious. And again, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Patrick M. Meter