*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY JOHNTIL WEBB,

Defendant-Appellant.

UNPUBLISHED
January 22, 2026
1:08 PM

No. 365744
Kent Circuit Court
LC No. 22-007819-FC

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right his convictions of assault with intent to murder (AWIM), MCL 750.83; felon in possession of a firearm (felon-in-possession), MCL 750.224f; and possession a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). On appeal, defendant argues that he received ineffective assistance of counsel, the trial court erred by failing to orally instruct the jury following closing arguments, the trial court erred when sentencing defendant, and the prosecution committed misconduct. We affirm his convictions and sentence, but remand to the trial court for the ministerial task of correcting his presentence investigation report (PSIR).

## I. BACKGROUND

The case involves the shooting of Zachary DeGroot on July 8, 2022, in Grand Rapids. DeGroot was shot multiple times while walking on Plymouth Avenue. A witness, Lindsay Bower, recorded defendant fleeing the scene. The prosecution's theory was that defendant mistook DeGroot for Brandon Bechtold, who had previously shot and killed defendant's son on July 4, 2022. Bower identified defendant in a photo lineup on the day of the shooting.

Detective Amanda Johnson interviewed DeGroot in the hospital on July 13, 2022. DeGroot described the shooter as a bald, black man, approximately 30 to 35 years old, who accused DeGroot of killing his "brother" before shooting him. DeGroot did not know the shooter but speculated that he was mistaken for someone involved in the other shooting. Detective Johnson confirmed that the shooter was identified through a video recording.

Defendant was charged with AWIM, felon-in-possession, and felony-firearm. The trial began in February 2023, with the jury receiving instructions on the elements of the charges and the presumption of innocence. The prosecution presented 911 recordings from July 8, 2022, including a call from defendant's daughter.

DeGroot testified, identifying defendant as the shooter, despite losing his glasses during the incident. Law enforcement and other witnesses provided testimonies about the shooting, including descriptions of the suspect and the vehicle involved. Crime-scene technician Daryl Clemens presented photographic evidence.

The prosecution presented a video recorded by Bower, showing defendant running from the scene. Detective Johnson obtained a search warrant for defendant's phone, revealing a text message from Antionette Evans, the mother of defendant's murdered son, indicating that Bechtold had been arrested out of state. The prosecution argued that defendant's actions were premeditated.

On the other hand, the defense argued that defendant had no motive to kill DeGroot, as defendant knew Bechtold was in custody. The defense also challenged the reliability of eyewitness identifications and presented Sarah Sella's testimony, which contradicted other witness accounts. The defense contended that the shooting was a drive-by involving different individuals. Detective Johnson's rebuttal testimony contradicted defendant's account of his route on the day of the shooting.

The jury found defendant guilty on all counts. The trial court sentenced defendant to serve two years' imprisonment for the felony-firearm conviction, followed by 25 to 80 years' imprisonment for the AWIM conviction, and 6 to 80 years' imprisonment for the felon-in-possession conviction.

Defendant moved for a new trial, claiming ineffective assistance of counsel. The motion argued that defense counsel failed to object to DeGroot's in-court identification and did not call an expert witness on eyewitness reliability. The trial court denied the motion, but this Court remanded the case to the trial court for a *Ginther*[1] hearing.[2]

During the *Ginther* hearing, Daniel Roberts, an assistant construction engineer with the Michigan Department of Transportation (MDOT), testified that road construction did not occur in 2022, contradicting Detective Johnson's testimony. In addition, Dr. Colleen Seifert provided expert testimony on the unreliability of eyewitness memory and the impact of stress and suggestion on identifications. The trial court denied defendant's motion for a new trial.

The trial court also denied defendant's motion to reopen proofs and reconsider its order, despite evidence suggesting defense counsel was aware of potential objections to the identification.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Webb*, unpublished order of the Court of Appeals, entered July 24, 2024 (Docket No. 365744).

Defendant now appeals.

## II. ANALYSIS

## A. EYEWITNESS TESTIMONY

First, defendant argues that defense counsel was ineffective for failing to move to suppress DeGroot's first-time-in-court identification and for failing to present expert testimony about the unreliability of the identification.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). This Court reviews for clear error a trial court's factual findings and reviews de novo questions of constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Clear error exists when this Court is left with a definite and firm conviction that the trial court made an error. *People v Buie*, 491 Mich 294, 315-316; 817 NW2d 33 (2012).

Defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel, defendant must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Defendant bears a heavy burden to show that counsel made errors so serious that counsel was not performing as guaranteed by the Sixth Amendment, and defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). Defense counsel's performance prejudiced the defense if there is a reasonably probability that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667. A defendant must establish the factual predicate for his or her claims of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant argues that defense counsel's failure to object to DeGroot's first-time-in-court identification was deficient when Detective Johnson told DeGroot that officers had arrested the shooter, who was caught on video. In other words, defendant argues, the in-court identification was tainted because the police essentially told DeGroot beforehand that the correct person had been arrested. In *People v Posey*, 512 Mich 317, 337; 1 NW3d 101 (2023) (opinion by BOLDEN, J.),[3] our Supreme Court addressed the "concerns about unnecessary suggestiveness associated with first-time-in-court identification evidence." The Court held that "an unnecessary first-time-in-court identification procured by the prosecution—a state actor—implicates a defendant's due-process rights in the same manner as an in-court identification that is tainted by an unduly

---

[3] See *People v Purdle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 4 (stating that, although the lead opinion in *Posey* was not technically binding, this Court will follow it in the interests of judicial economy).

suggestive out-of-court identification procedure employed by the police," and "trial courts must consider reliability factors such as those at issue when an in-court identification is tainted by an unduly suggestive out-of-court identification procedure." *Id*. at 339-340. Ultimately, the Court assumed that the first-time-in-court identification violated the defendant's right to due process, but determined that the defendant was not entitled to a new trial because he did not demonstrate plain error or ineffective assistance of counsel. *Id*. at 340. The Court stated that it was "not constitutionally deficient for trial counsel to fail to raise a challenge based on a desired change in the law." *Id*. at 342 n 10.

The Court issued *Posey* after defendant's trial. Defendant argues on appeal, however, that even before *Posey*, defense counsel had a basis to object to DeGroot's identification, but defense counsel did not research the issue and was not familiar with the relevant law.

DeGroot's identification was tainted by Detective Johnson telling him that the shooter had been caught on video and arrested. See *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998). It is true that defense counsel cannot be faulted for failing to raise a meritless objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). In this case, however, Detective Johnson's statements to DeGroot during the hospital interview may have significantly impacted or reduced the accuracy of DeGroot's in-court identification seven months later through the impact of postevent contamination and confirmation bias, as our Supreme Court suggested in *Gray*. Detective Johnson's statements indicated to DeGroot that there was no doubt that the shooter had been arrested because there was a witness who captured the incident on video. In fact, Bower's video only recorded defendant after the shooting and, although powerful evidence, could theoretically have missed recording the actual shooter.

Despite defense counsel's experience indicating to him that in-court identifications were problematic, he did not think that gave him a basis to object to the identification in this case. However, there were, as defendant argues on appeal, factors that suggest that DeGroot's identification was unreliable. DeGroot lost his glasses during the incident, and DeGroot was, of course, likely under significant stress in the situation. Dr. Siefert testified that traumatic or stressful situations lessen the accuracy of an eyewitness. DeGroot also did not know defendant, and it is more difficult for people to accurately identify people unknown to them, according to Dr. Siefert. Further, the issues of cross-racial identification and the weapons-focus may have impacted DeGroot's ability to accurately identify the shooter. Considering the combination of Detective Johnson's statements to DeGroot with the suggestiveness of DeGroot seeing defendant for the first time at trial, it fell below an objective standard of reasonableness for defense counsel not to object to the identification, as that objection may have been successful.

Arguably, it also fell below an objective standard of reasonableness for defense counsel not to at least consult with an expert witness regarding eyewitness identification. Although "an attorney's selection of an expert witness may be a paradigmatic example of trial strategy, that is so only when it is made after thorough investigation of the law and facts in a case." *People v Ackley*, 497 Mich 381, 390; 870 NW2d 858 (2015) (cleaned up). As defendant argues on appeal, defense counsel lacked knowledge about the science of eyewitness identification. An expert witness could have explained that DeGroot's confidence was not necessarily predictive of his accuracy. But see *People v Kowalski*, 492 Mich 106, 143; 821 NW2d 14 (2012) ("[Q]uestions of eyewitness identification, fading memories, witnesses' body language, and the like involve

obvious human behavior from which jurors can make commonsense credibility determinations.") (quotation marks and citation omitted). Thus, although defense counsel effectively cross-examined the witnesses, and although our Supreme Court strongly implied in *Kowalski* that expert testimony typically is not necessary regarding eyewitness identification, when both DeGroot and Bower were going to identify defendant as the shooter, we may accept for the purposes of this appeal that it was not objectively reasonable for defense counsel to fail to at least consult with an expert on how to contest these identifications.

Defendant must still demonstrate prejudice by these errors, however, and defendant cannot show that either error, or a combination of them, prejudiced him. There is no reasonable probability that a different outcome would have occurred even if DeGroot's identification had been suppressed or defendant presented expert testimony regarding eyewitness identification. See *Jordan*, 275 Mich App at 667.

First, defendant conceded at trial that he was the person shown in Bower's recording. As defendant argues on appeal, the jury still had to determine whether defendant, shown running away from the scene of the incident, was the person who shot DeGroot. Defense counsel effectively cross-examined Bower, including about her inability to see the entire incident. Moreover, Bower saw defendant shoot from the car. Although the lapse in time from the incident to trial may reduce the accuracy of DeGroot's first-time-in-court identification, Bower immediately and confidently identified defendant in a photo lineup the same day as the shooting. Defendant argues that Bower's identification was the result of seeing defendant running after the shooting, but Bower testified specifically about seeing defendant shooting the gun. Further, defendant's daughter and Evans saw DeGroot, whom they thought was Bechtold, just minutes before the shooting. And, even if an additional witness did not identify defendant at trial, his description of the shooter at the time of the shooting does not rule out defendant. The jury had the opportunity to hear Sella's testimony and determined that defendant was the shooter. Therefore, considering the evidence connecting defendant to the crime, defendant cannot demonstrate a reasonable probability of a different outcome had defense counsel objected to DeGroot's identification or called an expert witness.

## B. REBUTTAL TESTIMONY

Next, defendant argues that defense counsel was ineffective for failing to object to Detective Johnson's rebuttal testimony.

The Confrontation Clause of the Sixth Amendment to the United States Constitution "prohibits the admission of out-of-court statements that are testimonial in nature unless the declarant was unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant." *People v Clark*, 330 Mich App 392, 432-433; 948 NW2d 604 (2019). " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered

-5-

in evidence to prove the truth of the matter asserted." MRE 801(c).[4] "Hearsay is not admissible except as provided by these rules." MRE 802.

First, defense counsel's failure to object to Detective Johnson's rebuttal testimony constituted deficient performance. Detective Johnson was testifying about what her coworker told her that an MDOT employee told the coworker. This was hearsay, and because defense counsel did not object, the prosecution did not raise any possible exception to the rule against hearsay or address how the testimony did not violate the Confrontation Clause. And, Detective Johnson's rebuttal testimony was incorrect, as the prosecution concedes. Roberts, of MDOT, testified at the *Ginther* hearing that the underpass was open at the time of the shooting, rather than closed as Detective Johnson testified. Accordingly, defendant could had driven the route that he testified driving to Evans's apartment. Instead, the prosecution was able to argue, after Detective Johnson's improper rebuttal testimony, that defendant was not telling the truth about his driving route.

Defense counsel thought that defendant's route to Evans's home was a collateral matter. The route, however, determined whether defendant would have come across DeGroot by accident. Further, it was relevant to the credibility and accuracy of defendant's testimony. There was no strategic reason for defense counsel not to object to the testimony when it was clear hearsay, and he was deficient in this regard. See *Trakhtenberg*, 493 Mich at 143.

However, there is not a reasonable probability that the error affected the outcome of the proceedings. As previously discussed, the evidence against defendant, including his concession that he was at the scene of the shooting, as well as his apparent motive regarding the murder of his son, supported the jury's verdict. Moreover, the prosecution also elicited from defendant that he did not go further north than an identified bus stop on Plymouth Avenue, but defendant actually was further north than the bus stop, as the prosecution argues in closing on the basis of Bower's video. Therefore, defendant was not denied effective assistance of counsel and is not entitled to a new trial.

## C. JURY INSTRUCTIONS

Next, defendant argues that the trial court erred by failing to provide final oral instructions to the jury about the presumption of innocence, burden of proof, reasonable doubt, and the elements of the offenses. Alternatively, defendant argues that defense counsel was ineffective for failing to object to the manner of final jury instructions.

First, the prosecution argues that defendant waived this claim of error by approving the instructions. An affirmative statement that there are no objections to jury instructions constitutes express approval of the instructions and waives review on appeal. See *People v Matuszak*, 263 Mich App 42, 57; 687 NW2d 342 (2004). Our Supreme Court has addressed the difference between waiver and forfeiture as follows:

---

[4] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the rules as they were at the time of defendant's trial.

Waiver has been defined as the intentional relinquishment or abandonment of a known right. It differs from forfeiture, which has been explained as the failure to make the timely assertion of a right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. Mere forfeiture, on the other hand, does not extinguish an error. [*People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted).]

In this case, defense counsel expressed having no objections to the jury instructions. As defendant argues on appeal, however, defense counsel's approval could have been related only to the content of the jury instructions, and, although at that point, defense counsel could have requested oral instructions, it is not clear that defendant was expressly approving the trial court's decision to only provide the written instructions. Accordingly, defendant's challenge to the jury instructions was forfeited, rather than waived.

We review unpreserved errors for plain error affecting substantial rights. *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011). "Plain error affected the defendant's substantial rights if (1) there was an error, (2) the error was clear or obvious, and (3) the error prejudiced the defendant." *People v Heft*, 299 Mich App 69, 78-79; 829 NW2d 266 (2012). To warrant relief, a plain error must have "resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings." *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019).

The trial court must properly instruct a jury. *People v Czuprynski*, 325 Mich App 449, 456; 926 NW2d 282 (2018). MCR 2.513(N)(1) provides that, after closing arguments, the trial "court must orally instruct the jury as required and appropriate, but at the discretion of the court, and on notice to the parties, the court may orally instruct the jury before the parties make closing argument." Even before MCR 2.513 was amended to include "orally," our Supreme Court held in *People v Traver*, 502 Mich 23, 40; 917 NW2d 260 (2018), that a trial court must provide oral instructions. The Court also determined that, because there was not a complete failure to instruct the jury, the error was nonstructural and "subject to a waiver analysis." *Id*. at 40 n 7. Since that time, the Court amended MCR 2.513 in response to the *Traver* decision. See Staff Comment to 2019 Amendment of MCR 2.513(N)(1).

In this case, it was error for the trial court to fail to orally instruct the jury, although it is not a structural error requiring automatic reversal. At the beginning of trial, the trial court properly instructed the jury, through oral instructions, on the elements of the offense and reasonable doubt, the burden of proof, and the presumption of innocence. Further, the handout explained these concepts, and the trial court directed the jury to the handout at the close of trial. Defendant has not demonstrated that the error prejudiced defendant, see *Heft*, 299 Mich App at 79, or that it "resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings," *Walker*, 504 Mich at 276.

Because defendant cannot demonstrate that the lack of oral instructions at the completion of trial prejudiced him, even if this Court determined that defendant waived the issue, defendant cannot demonstrate that he received ineffective assistance of counsel in this regard. Defendant did

not include this challenge in his motion for new trial. Therefore, this issue is not preserved and reviewed for errors apparent on the record. See *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). It fell below an objective standard of reasonableness for defense counsel not to request that the trial court orally instruct the jury after closing arguments when the requirement for oral instructions is clear. See MCR 2.513(N)(1); *Traver*, 502 Mich at 43. As explained, however, there is no reasonable probability of a different outcome had the jury heard the oral instructions. See *Jordan*, 275 Mich App at 667.

## D. SENTENCING

Defendant also argues that the trial court erred by assessing 50 points for OV 6 and that his PSIR erroneously includes points for OV 17.

We review de novo whether the trial court properly interpreted and applied the sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). We review for clear error, however, a trial court's factual findings under the sentencing guidelines, and the findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A defendant is entitled to resentencing when the trial court made an error in identifying the appropriate guidelines range. *People v Francisco*, 474 Mich 82, 90-91; 711 NW2d 44 (2006).

OV 6 addresses an offender's intent to kill or injure a person. MCL 777.36(1). The trial court properly assigns 50 points if the offender had a premeditated intent to kill. MCL 777.36(1)(a). The trial court properly assigns 25 points if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). The trial court's assessment of points for OV 6 must be consistent with the jury verdict unless the trial court has information that was not presented to the jury. See MCL 777.36(2)(a).

The elements of AWIM are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Davis*, 216 Mich App 46, 53; 549 NW2d 1 (1996) (quotation marks and citations omitted). Premeditation is, accordingly, not an element of AWIM. "To premeditate is to think about beforehand . . . ." *People v Woods*, 416 Mich 581, 599 n 2; 331 NW2d 707 (1982) (quotation marks and citation omitted). "[P]remeditation may be established by circumstantial evidence tending to show that a defendant had an opportunity to think about, evaluate, or take a 'second look' at their actions." *People v Walker*, 330 Mich App 378, 383; 948 NW2d 122 (2019) (citation omitted). "The opportunity must be adequate, but it need not be long." *Id*. at 383-384. Premeditation can be demonstrated by a relationship between the defendant and the victim, the defendant's actions before and after the offense, and the circumstances of the offense. *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998). Inferences to support a finding of premeditation "must have support in the record and cannot be arrived at by mere speculation." *Id*. at 301.

In this case, defendant was either told that DeGroot, misidentified as Bechtold, was walking down the street, or he incidentally saw DeGroot. Either way, he went after DeGroot with his gun and had time to think about what he was going to do, at least before shooting DeGroot the

final four times. Moreover, the record is clear that there was some gap of time between two sets of gunshots, suggesting that defendant had an opportunity for premeditation. Therefore, the trial court did not err by assessing 50 points for OV 6, and defendant is not entitled to resentencing.

Defendant also argues, however, that his PSIR erroneously reflects 10 points for OV 17. OV 17 relates to the degree of negligence that a defendant exhibits. MCL 777.47(1). Ten points are warranted if "[t]he offender showed a wanton or reckless disregard for the life or property of another person." MCL 777.47(1)(a). A trial court may not assess 10 points for OV 17 if the trial court assessed points for OV 6. MCL 777.47(2). Further, a trial court may only assess points for OV 17 "if the offense or attempted offense involve[d] the operation of a vehicle." MCL 777.22(1).

In this case, the trial court did not address OV 17 at the sentencing hearing when addressing the variables for which it was assessing points. Further, the trial court noted that defendant's total OV score was 115 points. Therefore, the inclusion of 10 points for OV 17, and the total OV score of 125 points, appears to be in error. There is nothing in the record to demonstrate that the trial court relied on incorrect information when imposing defendant's sentence, however, and the sentencing error did not alter the sentencing guidelines range. See *People v Charboneau*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364596); slip op at 10. Accordingly, resentencing is not required, but a remand is appropriate for the ministerial task of correcting the PSIR to reflect zero points for OV 17. See *id*.

## III. STANDARD 4 BRIEF

In a Standard 4 brief, defendant argues that defense counsel was ineffective for stipulating to the admission of prosecution Exhibits 10 and 53. Further, defendant argues that the prosecution committed error by admitting this evidence.

As an initial matter, defendant did not include a statement of questions presented with his Standard 4 brief. An appellant must identify issues in a statement of questions presented. MCR 7.212(C)(5). This Court is not required to consider issues that a party does not properly set forth in a statement of questions presented. *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000). Because defendant does engage in legal analysis and relies on the lower court record, we will address defendant's claims.

Defense counsel stipulated to Exhibit 53, the picture of defendant in his work shirt standing next to a measuring tape. The prosecution admitted this picture along with other pictures that Clemens had taken, but Clemens did not take this picture. Defendant does not establish that this picture was prejudicial or how it would have affected the outcome of the proceedings when defendant conceded that he was at the scene of the shooting in his work shirt, and the jury was otherwise aware that defendant had been arrested.

As to a 911 call, defendant argues that the exhibit was hearsay because the caller was not present at trial to testify. Defense counsel eventually identified the phone call as constituting hearsay but, as defendant notes, defense counsel already had stipulated to the admission of the evidence. Even assuming that defense counsel's failure to object to this call was deficient, defendant again cannot demonstrate prejudice when he conceded that he was at the scene of the shooting, and the 911 call essentially corroborated that fact. There is not a reasonable probability

that excluding the phone call would have affected the outcome of the proceedings. See *Taylor*, 275 Mich App at 186.

Finally, defendant argues that the prosecution committed error by relying on this evidence. This Court reviews for plain error unpreserved claims of prosecutorial error. *People v Smith*, ___ Mich App ___, ____; ____ NW3d ____ (2024) (Docket No. 362114); slip op at 13. "Issues of prosecutorial [error] are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Further, this Court will not find error requiring reversal if a curative instruction would have alleviated the prejudicial effect. *Unger*, 278 Mich App at 235.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial [error] is whether a defendant was denied a fair and impartial trial." *Dobek*, 274 Mich App at 63. Defendant has not demonstrated that the prosecution improperly admitted these exhibits or that their admission was unfairly prejudiced defendant and denied him a fair trial. Accordingly, reversal is not warranted.

## IV. CONCLUSION

We affirm defendant's convictions and sentence. However, we remand to the trial court for the ministerial task of correcting his PSIR, as stated in our opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado